**STATE of Missouri, Respondent,**

v.

**Samuel L. JUSTUS, Appellant.**

No. SC 87604.

Supreme Court of Missouri,
En Banc.

Nov. 21, 2006.

---

Ellen H. Flottman, Office of Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, for Respondent.

MICHAEL A. WOLFF, Chief Justice.

Samuel Justus challenges his conviction for child molestation in the first degree on the basis that admission of certain hearsay statements of the alleged child victim violated his constitutional right to confront and cross-examine the witness against him because the child did not testify at trial and Justus had no prior opportunity to cross-examine her. In the alternative, Justus argues that the out-of-court statements did not have "sufficient indicia of reliability" to be admissible under section 491.075,[1] which allows hearsay evidence of a child's statements in certain circumstances.

The United States Supreme Court's decisions in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and *Davis v. Washington*, —— U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), applying the Confrontation Clause of the Sixth Amendment, govern this case. The question is whether the statements were testimonial. If so, they were inadmissible.

This Court holds that the child's out-of court statements were "testimonial," under the Supreme Court precedents, as there was not an ongoing emergency and because the primary purpose of the interrogations was to prove past events potentially relevant to a later criminal prosecution. Admission of the statements, without a prior opportunity for cross-examination, violated Justus' constitutional right to confront witnesses against him. The trial court's judgment is reversed, and the cause is remanded.

## Facts and Procedural History

Justus was charged with child molestation in the first degree for acts involving his three-year-old daughter, S.J.[2] The State filed a pre-trial motion to admit sev-

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. Section 566.067. The statute in effect at the time of Justus' conviction defines the crime of child molestation as follows:

   1. A person commits the crime of child molestation in the first degree if he subjects another person who is less than twelve years of age to sexual contact.

   2. Child molestation in the first degree is a class C felony unless the actor has previously been convicted of an offense under this chapter or in the course thereof the actor inflicts serious physical injury, displays a deadly weapon or deadly instrument in a threatening manner, or the offense is com-

eral hearsay statements of S.J. pursuant to section 491.075. Section 491.075 allows admission, under certain circumstances, of out-of-court statements made by a child victim regarding sex offenses.[3] The State alleged that S.J. was "unavailable as a witness" because of severe emotional distress. Justus filed a motion objecting to the admission of the hearsay testimony of three adult witnesses—Joyce Estes, Cynthia Debey, and Bernice Fields—regarding what S.J. had told them. Justus asserted, in part, that the statements did not have sufficient indicia of reliability and admitting them would violate his "right to be confronted with the witnesses against him." After a hearing, the trial court found that the hearsay statements satisfied the requirements of section 491.075 and ruled that they would be admissible at trial.

Just prior to calling the jury in at trial, the court noted the recent United States Supreme Court decision in *Crawford v. Washington* and said the court would consider whether to change its pre-trial decision to admit testimony pursuant to section 491.075. The trial court indicated that it had held a hearing on the availability of the witness and on the reliability of the statements. The court decided that the criteria of the statute were met, and "in light of the Crawford decision," affirmed its previous order allowing the evidence.

The State called four witnesses at trial: Debbie Justus, Bernice Fields, Cynthia Debey, and Joyce Estes. S.J. did not testify.

Debbie Justus testified that she is Samuel Justus' former spouse and S.J.'s mother. S.J. had visitation with Mr. Justus every weekend from Thursday evening to Sunday evening beginning sometime around the 2001 dissolution of their marriage and ending in August of 2002. S.J. was three years old during this time period. Debbie testified that on the nights after S.J. visited Mr. Justus, she would wet her bed, would have nightmares, and was afraid to sleep. Sometime after S.J. began visits with Mr. Justus, she would cry and did not want to visit him. Every time S.J. visited Mr. Justus, she would return home with a yeast infection. The infections stopped when the visits stopped.

Bernice Fields, S.J.'s grandmother, testified that in August of 2002, while she was visiting with S.J. and brushing her hair, S.J. began rubbing her private area. Fields asked S.J. why she was doing that and S.J. told her that her daddy "rubs me there." S.J. also told Fields that her father "kisses" her "pee-pee" and that she "kiss[es] his pee-pee too." S.J. described her father's genitalia to Fields as similar to the genitalia of the horse in the nearby pasture. S.J. showed Fields a masturbatory style hand motion that she makes when she is "kissing her daddy's pee-pee." S.J. told Fields that "yellow stuff" would come out of his "pee-pee" when she did that. Fields also testified that S.J. was referring to Samuel Justus when describing the above-stated acts, as opposed to S.J.'s mother's boyfriend. Shortly after talking to S.J., Fields called the child abuse hotline. Because Samuel Justus was coming

mitted as part of a ritual or ceremony, in which case the crime is a class B felony.

3. The trial court must first hold a hearing to determine the reliability of the statement. Section 491.075(1). In addition, the child must either (1) testify at the proceeding, (2) be

an unavailable witness, or (3) must be "unavailable" due to significant emotional or psychological trauma as a result of being in the defendant's presence or because the defendant caused the unavailability. *Id.* at 491.075(2).

to pick S.J. up that evening, Fields took S.J. to an office where S.J. met with Cynthia Debey, who investigates child abuse and neglect for the division of family services.

Debey, who talked to S.J. after the hotline call, testified that she has training in investigations, evidence and interviewing and has had "at least 30 training hours with law enforcement and outside agencies that come in to help work with interviewing children and perpetrators, documenting cases." Debey interviewed S J. in a "visitation room," which has toys, a couch, and a one-way mirror so that someone on the outside of the room can view inside the room without detection. During the interview, Debey asked S.J. if she had anything to tell her about what her father had done. In response, S.J. described acts indicating that her father had performed oral sex on her and that her father made her perform sexual acts on him. S.J. correctly identified her vaginal area to Debey and described her father's genitals as looking like a "tail" with a "knob" on the end. S.J. indicated that these acts occurred at her father's home. S.J. told Debey that she knew Debey would protect her from her father. Debey did not see any signs that S.J. was untruthful.

Joyce Estes, a counselor and a licensed social worker for the Northwest Missouri Children's Advocacy Center in St. Joseph, testified that she performs forensic interviews of children alleging abuse and provides counseling, assessment, and evaluation services. Estes has over 18 years of experience in working with abused children. Debey referred S.J. to Estes after S.J. refused to talk to another worker at the advocacy center.

Estes performed a forensic interview of S.J. at the Center. Estes described a forensic interview as "an interview, an official legal interview done for law enforcement," which serves an investigatory, "fact-finding" purpose. Estes first met with S.J. in a play area. After about ten to 15 minutes, S.J. began to disclose some statements about the abuse. Estes then took S.J. to another room "[s]o the interview could be videotaped and audiotapes [sic]." During the videotaped interview, Estes asked S.J. what her name was. S.J. shrugged. When asked if her name was "[S.]", she nodded, but would not say it out loud. When asked her father's name, S.J. shook her head. Estes showed S.J. a picture, and S.J. said that it was a picture of a girl. Estes asked S.J. about several body parts, and S.J. just shrugged. Estes reminded S.J. that she had said earlier that she did not like her daddy and that he had kissed her "pee-pee." When asked if she had made that statement, S.J. shook her head. Estes then asked S.J. some questions about her birthday and her age, to which S.J. responded. After a while, S.J. told Estes that she did like Justus, but that she does not like him now because he kissed her "pee-pee"—that he just kept kissing it and kissing it. S.J. identified the "pee-pee" as the vagina on the picture of the girl. In response to questioning, S.J. said that Justus also kissed her "butt."

Estes showed S.J. another picture, which she correctly identified as a boy. S.J. identified the penis on the picture as a "little tail." S.J. said that Justus had one, but it was big and looked like a "water pump." Later, S.J. said: "Actually, it's his pee-pee." S.J. drew a picture of Justus' penis and said that she kissed it, but she did not like to kiss it. S.J. said it tasted like a tree and that she was in Justus' room when these acts occurred. S.J. also said that she would tell the judge what Justus had done. Estes testified at trial

that she is trained in assessing whether a child is truthful during interviews. Estes did not see any "red flags" indicating that S.J. was not truthful during the interview.

The State offered the videotape into evidence and the trial court overruled defense counsel's objection to its admission. The videotape was played for the jury. Justus testified in his defense, denying the charges.

The jury found Justus guilty of child molestation in the first degree. Defense counsel filed a motion for a new trial, raising the hearsay issue and asserting that the defense was "unable to cross-examine the victim." Justus had waived jury sentencing, and the trial court sentenced him to a 10–year prison term.

On appeal, Justus' only challenge is to the admission of S.J.'s, out-of-court statements to Joyce Estes and Cynthia Debey, including the videotaped interview.[4] Justus argues that the trial court erred and abused its discretion in admitting the hearsay statements and the videotaped interview, because such admission violated his right to confrontation guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by article I, section 18(a) of the Missouri Constitution. Justus, in the alternative, asserts that there were insufficient indicia of reliability to admit the out-of-court statements under section 491.075.

Following opinion in the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

## Discussion

### Section 491.075

The trial court, after a hearing, admitted into evidence S.J.'s out-of-court statements for their truth under section 491.075, which provides in relevant part:

1. A statement made by a child under the age of fourteen relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

   (1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

   (2) (a) The child testifies at the proceedings; or

   (b) The child is unavailable as a witness; or

   (c) The child is otherwise physically available as a witness but the court finds that the significant emotional or psychological trauma which would result from testifying in the personal presence of the defendant makes the child unavailable as a witness at the time of the criminal proceeding.

The trial court determined that there were sufficient indicia of reliability to admit the testimony and that the child was "unavailable" as a witness because of the significant emotional trauma of testifying in the presence of Justus. Justus' alternative grounds—that the trial court erred in applying the statute—are not well taken. The challenged testimony would be admissible under this statute. The admissibility

---

4. Justus, in this appeal, does not assert any error regarding the admission of the child's out-of-court statements admitted through the testimony of Bernice Fields, the child's grandmother, though Justus had objected to Fields' testimony in a pre-trial motion.

depends solely on whether the Confrontation Clause of the Sixth Amendment bars the testimony.

**The Right to Confrontation**

Justus does not challenge the constitutionality of section 491.075. This Court declines to address the constitutionality of the statute *sua sponte;* it is sufficient to point out that application of the statute is subject to the Confrontation Clause.

Justus argues that the testimony of Estes and Debey violated his Confrontation Clause rights under the United States Constitution and the Missouri Constitution because he did not have the opportunity to cross-examine S.J. This challenge was preserved for appeal.[5]

■■■ Missouri appellate courts generally review a trial court's decision to admit hearsay testimony for an abuse of discretion. *State v. Bell,* 950 S.W.2d 482, 484 (Mo. banc 1997). Questions of law, however, are reviewed *de novo. Barker v. Barker,* 98 S.W.3d 532, 534 (Mo. banc 2003). Whether admission of the challenged testimony violated the Confrontation Clause is a question of law, which the Court reviews *de novo.*

■ The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. Amend. VI.[6] The Missouri Constitution has a similar guarantee that "in criminal prosecutions the accused shall have the right to ... meet the witnesses against him face to face." Mo. Const. art. I, sec. 18(a). "The confrontation rights protected by the Missouri Constitution are the same as those protected by the Sixth Amendment of the United States Constitution." *State v. Schaal,* 806 S.W.2d 659, 662 (Mo. banc 1991).

■ *Crawford v. Washington* established a new framework for addressing a criminal defendant's confrontation rights under the Sixth Amendment. 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Abrogating its previous decision of *Ohio v. Roberts*[7], the Supreme Court declared in *Crawford* that in order to admit "testimonial" hearsay statements of an unavailable witness, the accused must have had an opportunity to confront, i.e., cross-examine, the witness. 541 U.S. at 42, 68, 124 S.Ct. 1354. "Where *testimonial* evidence is at issue," the Court said, "... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 68, 124 S.Ct. 1354. The Supreme Court,

5. Justus filed a pre-trial motion objecting to the hearsay as violating his rights to confront the witness against him. The objection was renewed at trial as to both witnesses and was preserved in Justus' motion for a new trial. Further, it is clear that the trial court was aware of the constitutional issue as she specifically ruled on *Crawford's* applicability to the hearsay evidence.

6. The Sixth Amendment is applicable to the states through the Fourteenth Amendment to the United States Constitution. *Pointer v. Texas,* 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

7. 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Under *Roberts,* the right to confrontation does not bar admission of an unavailable witness' statement against a criminal defendant if the statement bears "adequate 'indicia of reliability.'" This test is met when the evidence either falls within a "firmly rooted hearsay exception" or bears "particularized guarantees of trustworthiness." *Id.* at 66, 100 S.Ct. 2531. *Roberts* remains applicable to non-testimonial hearsay statements. *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354.

however, left undecided the "comprehensive definition of 'testimonial,'" but did say that "at a minimum," the term applies to "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* In *Crawford,* the witness' statements—made and recorded while the witness was interrogated in police custody—were undoubtedly testimonial. *Id.* at 65–68, 124 S.Ct. 1354.

Following *Crawford,* the Supreme Court in 2006, in *Davis v. Washington*[8] and its companion case *Hammon v. Indiana* said, "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." 126 S.Ct. at 2273. By contrast, the Court said, such out-of-court statements are testimonial "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 2273–74.

*Davis* left open the question of "whether and when statements made to someone other than law enforcement personnel are 'testimonial,'" but did find that 911 operators, though not themselves law enforcement officers, may be "agents of law enforcement when they conduct interrogations of 911 callers" and, thus, "consider[ed] their acts to be acts of the police." —— U.S. —— at ——, note 2, 126 S.Ct. 2266 at 2274, note 2, 165 L.Ed.2d 224.

Applying an objective, totality of the circumstances test in *Davis,* the Supreme

Court determined that statements made in response to a 911 operator's interrogations were not testimonial because the interrogation's "primary purpose was to enable police assistance to meet an ongoing emergency." *Id.* at 2277. There, the declarant was "speaking about events *as they were actually happening,* rather than 'describ[ing] past events," as in *Crawford. Id.* at 2276. In addition, the declarant was facing an "ongoing emergency" and her statements, viewed objectively, "were necessary to be able to *resolve* the present emergency, rather than simply to learn (as in *Crawford* ) what had happened in the past." *Id.* (Emphasis original). Further, the declarant's statements were made in a frantic and unsafe environment, not in a structured, formal setting as in *Crawford. Id.* at 2276–77.

The Supreme Court reached the opposite conclusion in *Hammon v. Indiana* in which police were responding to a domestic disturbance. *Id.* at 2272–73. When the police arrived at the Hammon residence, Amy Hammon told them that "nothing was the matter." *Id.* at 2272. Hershel Hammon told them that the couple had been fighting, but "everything was fine now." *Id.* While the couple was separated by police, one officer asked Amy what had occurred. *Id.* Amy gave a statement to the police and filled out an affidavit. *Id.*

The Supreme Court determined that the "interrogation was part of an investigation into possibly criminal past conduct . . ." as there was not an emergency or any immediate threat and the officer was trying to determine what had already happened. 126 S.Ct. at 2278. More specifically, the police had interceded in the domestic disturbance and stopped any further violence, and the statements were elicited in direct

8. —— U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

response to police officers' questions about what had happened. *Id.*

■ This case is the first case requiring this Court to apply *Crawford* and Davis to child victim hearsay admitted under section 491.075. In applying *Crawford* and *Davis,* this Court must first consider whether the statements made by S.J. to Debey and Estes produced "testimonial" statements.

In both interviews, S.J.'s statements were made in a formal setting in a question-and-answer format. S.J.'s statements to Debey were made as part of a government investigation of a hotline call. They were made in a governmental facility. Likewise, the statements made to Estes were made in an interview room in response to direct questioning. Although Estes is not a government worker, she was acting as a government agent when she interviewed S.J., as the division of family services made the referral to Estes to perform a "forensic interview" on S.J. In Estes' words, this meant "an official interview done for law enforcement."

Estes' interview was performed to preserve S.J.'s testimony for trial. Once S.J.

began to disclose details about the abuse, Estes escorted her to another room for the sole purpose of recording the conversation. Even at four years old, S.J.—who told Estes that she would tell a judge what her father had done—was aware that her statements could be used to prosecute Justus.[9] Estes was at least as aware of the purpose of the interview.

S.J.'s statements were not produced in the midst of an "on going emergency." Rather, the evidence shows that S.J. was not in any immediate danger. S.J. was speaking about past events, about what Justus *had* done. Her demeanor in the videotaped interview was calm, and in both interviews she was playing or coloring near and sometimes during the time she made the statements. While there is no doubt that one purpose of the interrogations was to enable assistance to the child, the circumstances indicate that their primary purpose was to establish or prove past events potentially relevant to later criminal prosecution.[10]

■ The circumstances of this case objectively indicate the primary purpose of

---

9. S.J. turned four just days before her interview with Estes.

10. Several courts have addressed this issue in light of *Crawford.* The majority of these cases, however, were written without the benefit of *Davis* and *Hammon.* *See, e.g., T.P. v. Alabama,* 911 So.2d 1117 (Ala.Crim.App. 2004) (child victim's out-of-court statements to a sheriff's department investigator regarding sexual abuse were testimonial); *In re T.T.,* 351 Ill.App.3d 976, 287 Ill.Dec. 145, 815 N.E.2d 789 (2004) (admission of testimonial statements made by victim to police and to department of children and family services' agent violated confrontation clause); *Flores v. State,* 121 Nev. 706, 120 P.3d 1170 (2005) (nontestifying child witness's out-of-court statements to police department's child abuse investigator and child protective services investigator were testimonial); *People v. Geno,*

261 Mich.App. 624, 683 N.W.2d 687 (2004) (child's statement to the children's assessment center's executive director that she had an "owie" did not violate defendant's right to confront his accuser because the statement was not testimonial); *People v. Sisavath,* 118 Cal.App.4th 1396, 13 Cal.Rptr.3d 753 (2004) (child sexual abuse victim's statement to interviewer for facility designed to interview child sexual abuse victims was testimonial); *Snowden v. State,* 156 Md.App. 139, 846 A.2d 36 (2004) (statements of children presented through testimony of social worker were testimonial); *State v. Bobadilla,* 709 N.W.2d 243 (Minn.2006) (child victim's statement to child protection worker was not testimonial); *State v. Mack,* 337 Or. 586, 101 P.3d 349 (2004) (statements made by a three-year-old child abuse witness to a government case worker in a police-directed investigation were testimonial).

the interrogations was to establish past events relevant to a later criminal prosecution. S.J.'s statements to both witnesses were testimonial. Testimonial statements may nevertheless be admitted if two conditions articulated in *Crawford* have been met: (1) witness unavailability, and (2) the defendant's prior opportunity to cross-examine the witness. The second condition is not met. Justus has never had the opportunity to cross-examine S.J.

■ Properly preserved confrontation clause violations are presumed prejudicial. The trial court's judgment can only be upheld if the error was "harmless beyond a reasonable doubt." *State v. Wolfe,* 13 S.W.3d 248, 263 (Mo. banc 2000); *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). "Under *Chapman* ... an error is harmless only if there could be no reasonable doubt that the error's admission failed to contribute to the jury's verdict." *Reed v. Thalacker,* 198 F.3d 1058, 1062 (8th Cir.1999).

■ The confrontation clause errors in this case were not harmless beyond a reasonable doubt. The record shows that Estes and Debey were strong witnesses for the State. Estes and Debey are trained child abuse experts. This alone bolstered S.J.'s statements to Fields that Justus sexually molested her. In addition, Estes and Debey both testified—based on years of experience and training—that S.J. appeared to be telling the truth. The State relied heavily on this evidence in closing arguments, specifically noting that Estes interviewed S.J. because she had 18 years of experience. Most importantly, as part of the testimony of Estes, the jury was allowed to view the videotaped interview of S.J. in which S.J. directly implicated Justus in the charged crime. The jury could have decided the case based on any of this erroneously admitted evidence. Without Debey's and Estes' testimony and the videotaped interview, the jury is left with the testimony of Debbie Justus, Bernice Fields and Samuel Justus. It is not certain that the jury would have reached the same conclusion with only these witnesses. At the very least, it cannot be said that this evidence was harmless beyond a reasonable doubt.

That said, however, the remaining evidence may well suffice to support a guilty verdict. Because the statements of Debey and Estes were believed to be admissible, the record does not reveal whether other evidence admissible under *Crawford* and *Davis* may have been available but considered unnecessary in the first trial. On remand the trial court and the parties may explore whether the victim, who is older now, is available to testify in person or by deposition in which she would be subject to cross-examination by defense counsel, as provided in section 491.680 or otherwise.

### Conclusion

The circuit court erred when it allowed Debey and Estes to testify to S.J.'s statements that Justus sexually molested her. Likewise, the court erred in admitting the videotaped interview of S.J. performed by Estes. Without this evidence, the case against Justus consists of Debbie Justus' and S.J.'s grandmother's testimony. The prejudice from the erroneous admission is evident. The judgment is reversed, and the cause is remanded.

All concur.