226 S.W.3d 151 (2007)
In the Interest of A.S.W.
No. SC 88375.
Supreme Court of Missouri, En Banc.
June 26, 2007.
*152 Craig G. Kallen II, Hais, Hais & Kallen, P.C., Clayton, for Appellant.
William C. Dodson, Imperial, Theodore R. Allen, Jr., Hillsboro, Jeremiah W. (Jay) Nixon, Atty. Gen., Gary L. Gardner, Asst. Atty. Gen., Jefferson City, for Respondents.
*153 John S. Appelbaum, Arnold, for Amicus Curiae.
PER CURIAM.[1]

Summary
A.S.W. was born in 1998. A.S.W.'s biological father suffered a brain injury after a fall at work in 2000 and was admitted to a rehabilitation clinic for therapy. In 2001, the juvenile officer filed a petition alleging that A.S.W. was in need of care and treatment and that the "father of the juvenile is inappropriate for placement due to disability." The court entered a consent judgment, order, and finding of jurisdiction. In 2002, the trial court entered an order terminating the father's parental rights. Father appealed, and this Court reversed the termination of his parental rights and remanded the case. In re A.S.W., 137 S.W.3d 448 (Mo. banc 2004) (A.S.W.I). After remand, the father filed a petition for a writ of habeas corpus and an alternative motion to modify legal and physical custody of A.S.W., seeking sole custody. Additionally, in 2006, the foster parents to A.S.W. filed a petition for appointment of guardianship of A.S.W. and sought to change his name. The trial court granted the petition for guardianship and declined to modify custody as the father requested. The father appeals both determinations. The judgments are affirmed.

Standard of review
The juvenile division's judgment will be affirmed unless it is not supported by the evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. Suffian v. Usher, 19 S.W.3d 130, 135-36 (Mo. banc 2000). In custody proceedings, the welfare of the child is the primary and overriding consideration. Anderson v. Jackson, 181 S.W.3d 172, 175 (Mo.App.2005). The rights and claims of the natural parent must be of secondary importance. Id. The court is vested with wide discretion in considering the best interests of the child on a motion for change of custody. Id. at 177. This Court defers to the findings of the trial court absent an abuse of discretion. Id.

This Court's mandate in A.S.W. I did not require a change in custody
In A.S.W. I, this Court reversed the termination of the father's parental rights on the basis that the state failed to present substantial evidence that additional services would not facilitate A.S.W.'s return to father within a certain period of time. 137 S.W.3d at 454. The Court specifically focused on the findings of the trial court in terminating father's parental rights and held that the findings were erroneous in their failure to address the potential for future efforts to assist father in parenting and in failing to consider the success or failure of such efforts. Id. Because the trial court failed to include such issues in its findings, this Court concluded that the findings did not constitute clear, cogent, and convincing evidence to support the termination of father's parental rights. Id.
In A.S.W. I, this Court did not require that the father be granted sole legal and physical custody. Instead, it held that the fact that father needed assistance to care properly for A.S.W. did not in itself justify termination of his parental rights. It remanded for consideration of "whether services are or could be provided to [f]ather so that he has `assistance from others in parenting a majority of the time'" and for *154 consideration of what services could be provided to assist father in learning how to better care for A.S.W. Father argues that he was not provided with such services nor were the necessary findings made that would justify termination of his parental rights. The issue on this appeal, however, is not termination of father's parental rights, but whether the trial court properly overruled father's motion to modify to give him custody of A.S.W. and whether the trial court erred in granting the foster parents' petition for guardianship.

The juvenile division still had jurisdiction
The father claims that he has fully recovered from his brain injury, that there was no evidence that he would impair A.S.W.'s emotional or physical development, and, as such, that there was no basis for the juvenile division's jurisdiction.
In 2001, the court, by consent judgment, found that it had jurisdiction over A.S.W. based upon a finding of neglect and abuse. Pursuant to section 211.151,[2] the custody determination was subject to modification on the court's own motion or, as here, upon the petition of father as A.S.W.'s parent. The parties do not dispute the assumption of jurisdiction over A.S.W. in 2001. In fact, the parties consented to the allegations in the petition of the juvenile officer seeking jurisdiction. Pursuant to section 211.151, and father's own motion to modify, the court had continuing jurisdiction to modify the custody determination made in 2001.

The trial court's judgment is supported by the evidence absent reliance on section 211.038
The father argues that the court erred in denying him custody of A.S.W. based solely on section 211.038, RSMo Supp.2004, because the statute did not take effect until after the father's motion to modify was filed. Under that statute, a child shall not be reunited with a parent or placed in the home where the parent resides if the parent has been found guilty of certain felony offenses where a child was the victim. In 1986, the father pleaded guilty to the crimes of sexual abuse and sodomy, which are included in the statute's list of offenses.
While the trial court did cite section 211.038 in its judgment concerning the father's motion to modify, it did not solely rely upon the statute. As previously noted, the overriding consideration in determining custody is the welfare of the child. Anderson at 175. Here, the trial court made significant findings with respect to the welfare of A.S.W. in its judgment in addition to its comment concerning section 211.038 and father's prior convictions. The court found that father was unfit and unable to assume the duties of guardianship. The court further found that emotional harm would come to A.S.W. if he was removed from his current home. The court found that father's physical and mental condition rendered him unable to address the specific needs of A.S.W. that would result from such emotional harm.
These findings were based upon substantial evidence in the record. There was significant testimony from several clinical professionals, as well as evidence from the previous proceedings of which the court took judicial notice. As previously stated, the court recited the conclusion of Dr. Powers that his current evaluation was similar to his previous observations and his *155 recommendations made at that time continued to be appropriate. In the termination proceeding, Dr. Powers testified that father suffered from a cognitive disorder that made it inappropriate for him to independently care for a child. He had serious questions regarding A.S.W.'s safety if father were given primary responsibility for A.S.W. Dr. Powers stated that father's condition was permanent, and while there may be small improvements with time, the overall condition would remain constant. The conclusions of Dr. Powers were echoed in the report of Michael Armour, Ph.D., a licensed psychologist who evaluated father pursuant to the efforts made by the court at reunification after the remand in A.S.W.I. Dr. Armour concluded that father was "unrealistic and vague" as to how he would care for A.S.W. In his report, Dr. Armour also stated that he believed father would have "significant problems" caring for A.S.W. because of his cognitive deficits and father would need assistance if awarded physical custody of A.S.W.
Additionally there was significant testimony from the father himself. When questioned about what typical problems he expected to encounter as A.S.W. grows up, father responded, "[n]one." He testified that he believed at eight years old A.S.W. would be in the fifth grade. The foster mother testified that A.S.W. had actually only just completed the second grade. The father was asked what he would be expected to do in the way of disciplining A.S.W., and he responded that he would make sure A.S.W. had his shots, was enrolled in school, and that he would "buy him anything he needs or anything he wants." Additionally, father's sister testified that she believed father's judgment was good when he was with her; however, father declared his intention to move out of his sister's home and find a home of his own for himself and A.S.W.
Further testimony was submitted from the foster mother, with whom A.S.W. resided, and Kimberly Steinmann, a counselor seeing A.S.W., regarding A.S.W.'s anxiety related to his visitation with father. Both testified that immediately after the visit with father in 2005, A.S.W. began suffering from nightmares and his behavior changed. He began to have problems in school and difficulty going to bed. Steinmann opined that A.S.W. should remain with the foster parents because he now sees them as his parents. While she was not certain that the anxiety exhibited by A.S.W. was related to father, she testified that A.S.W. had not exhibited these reactions to meeting other new people. Additionally, the foster mother testified that the nightmares and behavior issues began immediately following A.S.W.'s visit with father.
Based upon the foregoing, the trial court's conclusion that emotional harm would come to A.S.W. if removed from the foster parents' home, the finding that father was unable to meet the specific needs of A.S.W. resulting from that emotional harm, and the finding that the father was still not able to care for A.S.W. under the current circumstances were all supported by substantial evidence. This evidence supports the trial court's judgment regardless of the application of section 211.038.

Section 211.038 is not to be applied retroactively
Although the trial court's judgment is supported by the evidence, the court of appeals transferred the case to this Court because it believed the question of whether section 211.038 was to be applied retroactively was a question of general interest and importance. The statute is not to be applied retroactively.
*156 In this case, the parties agree that section 211.038 went into effect after the filing of father's motion to modify. Therefore, that section is not applicable to this case. Walsh v. Walsh, 184 S.W.3d 156, 157 (Mo. App.2006)(the statute in effect at the time a petition commencing an action is filed is the applicable statute). The trial court's reliance on In re T.M.E., 169 S.W.3d 581 (Mo.App.2005), is misplaced. The trial court in T.M.E. favorably mentioned the public policy contained in section 211.038. Nevertheless, the trial court in that case did not apply that statute in reaching its judgment other than noting the public policy expressed therein. T.M.E. at 586. To the extent T.M.E. found that section 211.038 was applicable in that case, it did so without any discussion as to whether the statute could be applied retroactively. T.M.E. at 589. It is not authority holding that section 211.038 is to be applied retroactively.

There is sufficient evidence to support granting the petition for guardianship
Finally, the father argues that there was no evidence to show that he was unfit, unwilling, or unable to care for A.S.W., or that A.S.W. would suffer emotional or physical harm if placed in father's custody. As discussed above in great detail, there was significant evidence to support the court's conclusions regarding the father's ability to care for A.S.W., particularly to deal with the special emotional needs A.S.W. would have if he were to be removed from his current home. Moreover, there was substantial evidence that A.S.W. was thriving in his current home. The foster mother testified that A.S.W. was a straight-A student and had received several awards at school for his performance. She stated that he enjoyed spending time with his family and playing sports. The foster parents attended A.S.W.'s soccer and baseball games. The foster mother said they have a very close relationship, and A.S.W. was a "happy kid," in her opinion. Based upon the evidence discussed concerning the father's ability to care for A.S.W. and evidence concerning A.S.W.'s welfare and best interests, the trial court did not err in granting the petition for guardianship.[3]

Conclusion
The judgments are affirmed.
All concur.
NOTES
[1] The Court of Appeals, Eastern District, transferred this case to the Court by an opinion authored by the Honorable Clifford H. Ahrens. Mo. Const. article V, section 10. Parts of that opinion are incorporated without further attribution.
[2] All statutory references are to RSMo 2000, except references to section 211.038 are to RSMo Supp.2004.
[3] Nothing in this opinion or in A.S.W. I precludes the filing and determination of a petition to terminate parental rights.