

# In the Missouri Court of Appeals
# Eastern District
## DIVISION FOUR

|  |  |
|---|---|
| IN THE INTEREST OF:  D.H. | )  No. ED109226 |
|  | ) |
|  | )  Appeal from the Circuit Court of |
|  | )  the City of St. Louis |
|  | ) |
|  | )  Honorable Steven R. Ohmer |
|  | ) |
|  | ) |
|  | )  Filed: May 3, 2022 |

## Introduction

D.H. appeals the juvenile court's judgment finding he committed, if he was an adult, third-degree domestic assault and failed to appear for a prior adjudication hearing.  D.H. raises two points on appeal.  In his first point, D.H. argues the juvenile court, by conducting his adjudication hearing without his physical presence, violated his constitutional rights to confront the witnesses against him, due process, and be present at all critical stages.  In his second point, D.H. argues there was insufficient evidence for the juvenile court to find he purposely failed to appear for a prior adjudication hearing.

Following an opinion by this Court on May 25, 2021, the case was transferred to the Missouri Supreme Court along with several similar cases involving proceedings conducted by video due to the COVID-19 pandemic.  The Missouri Supreme Court issued three opinions in

January 2022 and re-transferred this case with instructions for this Court to reconsider our holding given those decisions.[1]

We hold the juvenile court violated D.H.'s constitutional right to confront the witnesses against him. Because we vacate the juvenile court's judgment and remand, we decline to address Appellant's second point.

**Factual and Procedural Background**

On February 28, 2020, the juvenile officer filed a petition alleging D.H. came within the juvenile court's jurisdiction under section 211.031.1(3)[2] and D.H. attempted to cause physical injury to A.W. ("Victim") by striking her.[3] D.H. was not in custody when the petition was filed. D.H.'s adjudication hearing was scheduled for July 14, 2020. D.H. did not appear. Because D.H. failed to appear, the juvenile officer moved for the juvenile court to take D.H. into custody. The juvenile court granted the juvenile officer's motion. On August 7, 2020, the juvenile officer filed an amended petition, alleging, in addition to attempting to cause Victim physical injury by striking her, D.H. failed to appear for the July 14, 2020 adjudication hearing despite having notice.

D.H.'s adjudication hearing was held on September 9, 2020. The juvenile officer, the witnesses, and D.H.'s counsel were present at the hearing. D.H. appeared by two-way video conferencing from the juvenile detention center. D.H.'s counsel objected to D.H.'s physical absence from the adjudication hearing. D.H.'s counsel argued not allowing D.H. to be present at

---

[1] The Missouri Supreme Court decided *J.A.T. v. Jackson Cty. Juvenile Office*, 637 S.W.3d 1 (Mo. banc 2022); *C.A.R.A. v. Jackson Cty. Juvenile Office*, 637 S.W.3d 50 (Mo. banc 2022); and *State v. Smith*, 636 S.W.3d 576 (Mo. banc 2022).
[2] All statutory references are to RSMo (2016), unless otherwise indicated.
[3] The juvenile officer's petition also alleged D.H. took Victim's school I.D. card without her consent and D.H. knowingly damaged Victim's cell phone by throwing it against the ground. The juvenile court found D.H. did not commit these offenses.

his adjudication hearing violated D.H.'s right to confrontation and interfered with D.H.'s ability to confer with counsel. The juvenile court responded:

> All right. Well, the objection is noted and because of the pandemic, this is how we have proceeded, to not have the kids brought over from detention. And I've had several hearings, and how we proceeded is, if, during the hearing, that [D.H.]—if you have any questions, or you want to consult with your attorney, you need to let me know. Just indicate by speaking out or motioning or somehow because if you wish to speak to your attorney at any point, we will take a break and clear the courtroom and allow you and [counsel] to talk to each other.
>
> And we can do that as many times as often as needed, so if there's at any point that you wish to communicate, again, with [counsel], please let us know, and I will stop the hearing immediately and let you two talk to each other.
>
> . . .
>
> That's how I've handled this, [counsel], as we've moved along. I understand your concern, but I think it's necessary in light of the pandemic, and we've been able to move forward under that procedure. And I guess the same token: If you feel the need to speak to your client at any point as well, again, you can let me know, and we'll recess for that to occur.

The juvenile court took judicial notice of its "file and contents thereof." The juvenile court then conducted D.H.'s adjudication hearing without D.H.'s physical presence. D.H.'s counsel participated in the adjudication hearing by cross-examining the witnesses in person. At the close of the juvenile officer's evidence, the juvenile court ordered a short recess so D.H. and his counsel could confer. D.H. testified at his adjudication hearing by video.

During closing argument, the juvenile officer argued:

> And then I will just say as to the allegation . . . that the juvenile violated an order by failing to appear on July the 14th. The record is very clear. I asked the Court to take judicial notice. We were all in court on that day. There is no question. [D.H.'s counsel] informed the Court that day that he had been in contact with [D.H.], and [D.H.] knew that he was supposed to be here, and he didn't show up. We waited a long time, and he didn't show. So I believe that the record is very clear that that offense was also committed, Your Honor.

The juvenile court found D.H. committed, if he was an adult, third-degree domestic assault. The juvenile court also found D.H. failed to appear for a prior adjudication hearing. The juvenile court awarded care, custody, and control of D.H. to the Division of Youth Services for appropriate placement in a residential facility.

This appeal follows.

## Standard of Review

Juvenile proceedings are reviewed like other court-tried cases. *D.C.M. v. Pemiscot County Juvenile Office*, 578 S.W.3d 776, 786 (Mo. banc 2019) (citing *C.G.M., II v. Juvenile Officer*, 258 S.W.3d 879, 882 (Mo. App. W.D. 2008)). We will affirm a judgment in a juvenile proceeding unless it is not supported by evidence, is against the weight of evidence, or erroneously declares or applies the law. *Id.* (citing *In re A.S.W.,* 226 S.W.3d 151, 153 (Mo. banc 2007)). The constitutional protections applicable in criminal proceedings also apply in juvenile delinquency proceedings. *C.A.R.A.*, 637 S.W.3d at 54 (citing *In re N.D.C*., 229 S.W.3d 602, 605 (Mo. banc 2007)). Whether a person's rights were violated under the Confrontation Clause is a question of law this Court reviews *de novo*. *C.A.R.A.*, 637 S.W.3d at 54 (citing *State v. Justus*, 205 S.W.3d 872, 878 (Mo. banc 2006)). Properly preserved confrontation clause violations are presumed prejudicial. *C.A.R.A.*, 637 S.W.3d at 54 (citing *Justus*, 205 S.W.3d at 881).

## Discussion

*Point I: Adjudication Hearing Conducted Without D.H.'s Physical Presence*

In his first point, D.H. argues the juvenile court violated his constitutional rights to confrontation, due process, and be present at "critical stages" as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, Article I, section 18(a) of the Missouri Constitution, and Rule 128 when the juvenile court conducted his adjudication hearing

without his physical presence.[4]  D.H. argues his constitutional right to confront the witnesses against him was violated because the juvenile court conducted his adjudication hearing without his physical presence.  The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. CONST. amend. VI.  The Sixth Amendment applies to the states through the Fourteenth Amendment.  *Justus*, 205 S.W.3d 872 at n.6.

The juvenile officer argues the trial court did not err in proceeding without D.H.'s physical presence because it made an individualized finding a remote appearance was necessary to protect him from COVID-19.  Arguing the right to face-to-face confrontation is not absolute, the juvenile officer cites *Maryland v. Craig*, which held an accused's right to confrontation may be satisfied without a face-to-face confrontation "only where denial of such confrontation is necessary to further an important public policy and only where the testimony's reliability is otherwise assured." 497 U.S. at 837.  The juvenile officer cites non-binding authority to argue the two-prong *Craig* test may be met where a juvenile is excluded from the courtroom to prevent spreading a virus to the juvenile detention population.  The juvenile officer argues the orders of Missouri courts "clearly establish the procedures and rules set forth on court proceedings during the COVID-19 pandemic" and the trial court complied with these orders.

"Juvenile proceedings are civil, not criminal, and are focused on continuing care, protection, and rehabilitation of the juvenile, and not punishment." *In re A.C.C.*, 561 S.W.3d 425, 428 (Mo. App. E.D. 2018) (citing *J.D.H. v. Juvenile Court of St. Louis Cty.*, 508 S.W.2d 497, 500 (Mo. banc 1974)).  However, "the constitutional protections applicable in criminal proceedings are also applicable in juvenile delinquency proceedings due to the possibility of a deprivation of liberty equivalent to criminal incarceration." *N.D.C.*, 229 S.W.3d at 605.  "We

---

[4] All Rule references are to the Missouri Supreme Court Rules (2020), unless otherwise indicated.

5

review *de novo* whether a defendant's constitutional rights have been violated." *State v. Pate*, 469 S.W.3d 904, 908 (Mo. App. E.D. 2015).

The right to confront witnesses is similar to the right to be physically present at a proceeding, but they are not the same. The Confrontation Clause provides "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. CONST. amend. VI. The right to be physically present has a due process component in addition to its roots in the Confrontation Clause. *United States v. Gagnon*, 470 U.S. 522, 526 (1985). While physical presence is an element of an individual's right to confrontation, a person has a due process right to be present in person even when he is not being confronted with witnesses or evidence against him when "his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." *C.A.R.A.*, 637 S.W.3d at 58 (citing *Craig,* 497 U.S. at 846); *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (internal citations omitted). Here, the parties contest whether D.H.'s presence by video satisfies his constitutional rights to confront the witnesses against him, due process, and be present at his adjudication hearing. Because it is dispositive, we address only D.H.'s right to confront the witnesses against him. D.H. properly preserved his confrontation claim by objecting to the examination of witnesses while he was not physically present in the courtroom. *See C.A.R.A.*, 637 S.W.3d at 54.

We recognize the difficulties this pandemic presents to our state's trial courts. Still, the Missouri Supreme Court recently held "generalized concerns about the virus may not override an individual's constitutional right to confront adverse witnesses in a juvenile adjudication proceeding." *C.A.R.A.*, 637 S.W.3d at 67. The Court stated we should "continue to apply *Craig to the facts it decided*," and even if COVID-19 could satisfy *Craig's* important public policy

prong, the decision to allow a remote appearance must be supported by statutory authority and findings particularized to the person appearing remotely. *Id.* at 63-65 (emphasis added). The Court emphasized its COVID-19 Operational Directive expressly excluded from its guidance **"[p]roceedings necessary to protect the constitutional rights of criminal defendants**," and encouraged the use of technology **"to the extent not prohibited by constitutional or statutory provisions."** *Id.* at 64 (emphasis original).[5] The Directive was "carefully drafted to ensure the constitutional and statutory rights of juveniles were protected" during the pandemic. *Id.* at 66. While remote appearances may not always violate a party's constitutional rights, necessity or important public policy must be supported by findings of risk particularized to the party appearing remotely. *Id.* Contrary to the juvenile officer's position, such findings were not made here. Nor does the juvenile officer cite to statutory authority for a juvenile appearing remotely. Additionally, the purported necessity of parties appearing remotely is undercut when other parties appear in person. *Id.*

Because the witnesses were questioned while D.H. was present only by video, his constitutional right to confront the witnesses against him was violated.

Point I is granted.

*Point II: Sufficiency of the Evidence Supporting D.H.'s Failure to Appear*

In his second point, D.H. argues the juvenile court erred by finding he failed to appear for a prior adjudication hearing because the evidence did not show he failed to appear after receiving notice. He argues "although the court took judicial notice of 'its file and all the contents

---

[5] On May 4, 2020, the Missouri Supreme Court issued a Directive providing for suspension of in-person proceedings with exceptions including those "pursuant to chapters 210 and 211 pertaining to juvenile delinquency[.]" The Court directed for in-person hearings, "judges are encouraged to utilize all available technologies – including teleconferencing and video conferencing – to further limit in-person courtroom appearances to the extent not prohibited by the constitution or statutes as to these proceedings."

thereof,' those contents did not show that D.H. was given notice, or that a proper summons was issued ordering his appearance under Rule 114."[6]  He argues the juvenile court's finding he failed to appear violated his "rights guaranteed by the Due Process Clauses under the 14th Amendment to the U.S. Constitution and Art. I, § 10 of the Mo. Constitution."

The juvenile officer argues the trial court did not err in finding D.H. failed to appear because he and his counsel were given proper notice of the court date under Rule 114.  The juvenile officer argues D.H. discussed the court date with his counsel and chose not to appear.  The juvenile officer argues D.H. also failed to properly raise any argument regarding insufficient notice before the trial court.

Because Point I is dispositive, we decline to address Point II.

### Conclusion

The juvenile court erroneously declared and applied the law in admitting witness testimony in violation of D.H.'s right to confrontation. *C.A.R.A.*, 637 S.W.3d at 66.  The juvenile court's judgment is vacated and remanded.  We instruct the juvenile court to conduct D.H.'s adjudication hearing consistent with this opinion.

_____
Philip M. Hess, Judge

Gary M. Gaertner, Jr., Presiding Judge and
Michael E. Gardner, Judge concur.

---

[6] Rules 114.01-02 state the requirements for serving a summons after a petition has been filed against a juvenile and detail the form and content of the summons.