

# MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| **IN THE INTEREST OF: K.D.D.,** | ) | **WD84232** |
| | ) | |
| **Appellant,** | ) | **OPINION FILED:** |
| **v.** | ) | |
| | ) | **November 1, 2022** |
| **JUVENILE OFFICER,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**Honorable Jalilah Otto, Judge**

**Before Division Two:**
**Lisa White Hardwick, P.J., Thomas N. Chapman and Janet Sutton, JJ.**

K.D.D. appeals a judgment entered by the Jackson County Circuit Court Juvenile Division (juvenile court) dismissing his juvenile proceeding and transferring him to a court of general jurisdiction for criminal prosecution as an adult following a section 211.071[1] hearing (certification hearing). On appeal, K.D.D. argues that the juvenile court erred and violated his constitutional and statutory rights to be physically present at the certification hearing and also K.D.D.'s right to counsel when it required him to attend his hearing by two-way video instead of permitting him to be physically present in court. K.D.D. also argues that the juvenile court abused its discretion in denying his motion for continuance and in dismissing his juvenile cause of action and certifying

---

[1] All statutory references are to RSMo (2016), unless otherwise indicated.

him to be prosecuted as an adult under the general laws. Considering the Supreme Court of Missouri's opinion in *J.A.T. v. Jackson County Juvenile Office*, 637 S.W.3d 1 (Mo. banc 2022), we vacate the juvenile court's judgment and remand for an in-person certification hearing.

## Factual and Procedural Background

In late October 2018, K.D.D., who was then 16 years old, allegedly operated a vehicle in a reckless and dangerous manner, resulting in a collision with another vehicle, the death of one person, and injuries to another. In February 2020, the Jackson County Juvenile Officer (Juvenile Officer) received a referral for the incident and filed a petition alleging that K.D.D. committed first-degree involuntary manslaughter,[2] second-degree assault, and resisting arrest. The juvenile officer alleged K.D.D. committed the acts personally, or with an accomplice for whom K.D.D. would be criminally responsible.

In early March 2020, the Juvenile Officer, as authorized by section 211.071.1, filed a petition for certification to allow prosecution of K.D.D. under the general law as an adult. The petition for certification alleged that K.D.D. was not a proper subject to be dealt with under the juvenile code, and that he was beyond the rehabilitative care, treatment, and services available to him through the juvenile court. K.D.D. was 18 years old at the time of the filing.

The juvenile court scheduled K.D.D.'s certification hearing for early September 2020. Two days before the hearing, K.D.D. moved for a continuance, stating that

---

[2] The petition stated that K.D.D. committed second-degree involuntary manslaughter, however, the petition set forth the elements of first-degree involuntary manslaughter and cited the first-degree involuntary manslaughter statute.

2

K.D.D.'s psychological evaluation was not complete, K.D.D. was incarcerated on unrelated adult criminal charges, and he had an outstanding warrant from Kansas and counsel expected K.D.D. would go there after his release. The request noted that K.D.D. was 18 years old and that "a continuance is of no prejudice to [K.D.D.] as he has likely already 'aged out' of many services the Family Court has to offer." The day before the certification hearing, K.D.D. filed a separate motion in which he asserted his right to attend the hearing in person and objected to holding his certification hearing by video. K.D.D. argued, among other things, that he had the right to be physically present in the courtroom and confront adverse witnesses in person under both the United States and Missouri Constitutions.

The parties, all at different locations using the Webex two-way video conferencing platform, appeared for the certification hearing. K.D.D. appeared by two-way video from the Jackson County Detention Center—an adult jail—where he was being held on unrelated adult charges and his counsel appeared by two-way video from a separate location.

Before the hearing began, K.D.D.'s counsel objected again to proceeding without K.D.D.'s physical presence in the courtroom and in a different location from his counsel, and requested the matter be continued. K.D.D.'s counsel argued that not allowing K.D.D. to be present at his certification hearing interfered with his ability to confer with counsel. The attorney for the Juvenile Officer responded that orders from both the Supreme Court of Missouri and Jackson County permitted proceeding by video. The juvenile court overruled both K.D.D.'s continuance request and his objection to holding the certification hearing without his physical presence in the

3

courtroom, stating that its reasoning was "[b]ased on the most recent Supreme Court rulings as well as administrative orders of [Jackson County] and Webex being an approved form of conducting these hearings."

The juvenile court conducted the certification hearing, requiring K.D.D. to participate via two-way live video from the detention center. All others participating in the certification hearing—including the Juvenile Officer's sole witness—also appeared via two-way live video.

The Juvenile Officer's witness, the Deputy Juvenile Officer (DJO), testified about her certification report, her findings, and recommendation that K.D.D. be certified as an adult. Her recommendation was based on the nature of the present offenses, that K.D.D. had a pattern of committing offenses, and because of his age and prior participation in services through the juvenile system. K.D.D.'s counsel participated in the certification hearing by cross-examining the DJO and submitting a psychological evaluation that was completed after the hearing and that recommended K.D.D. remain in the juvenile justice system. The juvenile court delayed ruling on the certification petition until the psychological evaluation could be completed and filed with the court.

The juvenile court entered its judgment dismissing the petition under section 211.071 and transferring jurisdiction over K.D.D. to a court of general jurisdiction.

K.D.D. appealed, and in late August 2021, this Court stayed the appeal pending the Supreme Court of Missouri's decisions in *J.A.T.* and *C.A.R.A.*, which specifically analyzed the constitutional implications of conducting juvenile proceedings, specifically, adjudication hearings, by two-way video. *J.A.T.*, 637 S.W.3d at 7-10;

4

*C.A.R.A. v. Jackson Cnty. Juv. Off.*, 637 S.W.3d 50, 54, 64-66 (Mo. banc 2022). After *J.A.T.* and *C.A.R.A.* were vacated and remanded on January 11, 2022, the stay in this matter was lifted.

**Legal Analysis**

In his first point, K.D.D. argues the juvenile court erred by requiring him to attend his certification hearing via two-way video because it violated his constitutional due process rights and statutory right to be present at a critical stage of prosecution, and that the Supreme Court of Missouri's Operational Directives did not authorize the juvenile court to hold the certification hearing remotely via two-way video. K.D.D. properly preserved this issue for appeal by objecting to the virtual certification hearing before and at the outset of the hearing.

We review juvenile proceedings in the same manner as other court-tried cases and we will affirm the judgment "unless it is not supported by evidence, is against the weight of evidence, or erroneously declares or applies the law." *J.A.T.*, 637 S.W.3d at 6 (citation omitted). Whether a juvenile's constitutional rights were violated is a question of law that we review *de novo*. *Id.* "Properly preserved constitutional violations are presumed prejudicial." *Id*. at 7.

"Juvenile proceedings are civil, not criminal, and are focused on continuing care, protection, and rehabilitation of the juvenile, and not punishment." *In re C.A.M.*, 644 S.W.3d 600, 605 (Mo. App. E.D. 2022) (citation omitted). "However, 'the constitutional protections applicable in criminal proceedings are also applicable in juvenile delinquency proceedings due to the possibility of a deprivation of liberty equivalent to criminal incarceration.'" *Id.* (quoting *In re N.D.C.*, 229 S.W.3d 602, 605

5

(Mo. banc 2007)). "The United States Supreme Court has recognized certification hearings as 'critically important' proceedings that 'must measure up to the essentials of due process and fair treatment.'" *Id.* at 605-06 (quoting *Kent v. United States*, 383 U.S. 541, 556, 562 (1966)).

"The Fourteenth Amendment's due process protection applies to juvenile proceedings." *J.A.T.*, 637 S.W.3d at 7 (citing *In re Gault*, 387 U.S. 1, 30-31 (1967)). "The United States Supreme Court has held certain rights enumerated within the Bill of Rights apply to juvenile proceedings, including notice of charges, right to counsel, right of confrontation and cross-examination, and privilege against self-incrimination." *Id.* (citing *Gault*, 387 U.S. at 33, 41, 55, 56).

The United States Constitution, the Missouri Constitution, and Missouri statutory law guarantee the right to be present at critical stages of trial. *J.A.T.*, 637 S.W.3d at 7. "[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Id.* at 8 (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)).

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . . " U.S. CONST. amend. VI. The Sixth Amendment applies to the states through the Fourteenth Amendment. *State v. Justus*, 205 S.W.3d 872, 878 n.6 (Mo. banc 2006). "One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338 (1970); *see also* MO. CONST. art.

6

I, sec. 18(a) ("That in criminal prosecutions the accused shall have the right to appear and defend, in person and by counsel . . . ."); § 211.071.7(3) (requiring that, upon a finding that the petition should be dismissed, the juvenile court must enter a dismissal order containing "[f]indings showing that the [certification] hearing was held in the presence of the child and his or her counsel").

"While the right to be present is rooted largely in the Confrontation Clause, the right also has a due process component." *C.A.M.*, 644 S.W.3d at 606 (citing *United States v. Gagnon*, 470 U.S. 522, 526 (1985)). "[E]ven in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Stincer*, 482 U.S. at 745 (citation omitted).

"The right to be present is a common law principle designed to ensure the accused's presence impresses the gravity of the proceedings upon the participants." *C.A.M.*, 644 S.W.3d at 606. The Supreme Court of the United States has stated that "a fair trial could take place only if the jurors met the defendant face-to-face and only if those testifying against the defendant did so in his presence." *Crosby v. United States*, 506 U.S. 255, 259 (1993). This principle is applied to juveniles, through section 211.071.7(3), which require certification hearings to be held "in the presence of the child." *C.A.M.*, 644 S.W.3d at 606. Additionally, Rule 128.01[3] provides, in pertinent part:

> a. Except as provided in this Rule 128.01, in any proceeding under subdivision (2) or (3) of subsection 1 of section 211.031, RSMo, the

---

[3] Unless otherwise indicated, all rule references are to the Missouri Supreme Court Rules (2021).

juvenile and the juvenile's parents, guardian or custodian shall have the right to be present at all times during any hearing.

b. No hearing, including a hearing to determine under Rule 129 whether the juvenile is a proper subject to be dealt with under the provisions of the juvenile code, may be commenced without the presence of the juvenile unless the juvenile's presence is waived by counsel . . . .

With these principles and rights in mind, the Supreme Court of Missouri entered Operational Directives on May 4, 2020, outlining phases of operation for Missouri courts to follow during the COVID-19 pandemic. In the most stringent operation phase, operating phase zero, the Court suspended in-person proceedings with certain exceptions including "[p]roceedings pursuant to chapters 210 and 211 pertaining to juvenile delinquency and abuse, neglect, and termination of parental rights." *In re Operational Directives for Easing COVID-19 Restrictions on In-Person Proceedings* (May 4, 2020). For in-person hearings, and in all phases of operation, the Court encouraged judges and court staff to utilize "all available technologies—including teleconferencing and video conferencing—whenever possible to limit in-person courtroom appearances *to the extent not prohibited by constitutional or statutory provisions*." *In re Operational Directives* (emphasis added).

Our resolution of this case is guided by the Supreme Court of Missouri's decision in *J.A.T, v. Jackson County Juvenile Office*, 637 S.W.3d 1, 10 (Mo. banc 2022). In *J.A.T.*, the juvenile court excluded a juvenile from being physically present in the courtroom at his adjudication hearing, instead allowing his presence only through a two-way video over the juvenile's objections. 637 S.W.3d at 4, 8. The juvenile court excluded the juvenile because of the ongoing COVID-19 pandemic and the court's belief that allowing the juvenile's presence via two-way video was consistent with the

Missouri Supreme Court's Operational Directives and that it did not violate the juvenile's due process rights. *Id*. at 8-9.

The Supreme Court of Missouri held in *J.A.T.* that the juvenile's constitutional right to due process was violated when the juvenile court required his presence at his own adjudication hearing via two-way video over his objection. *Id*. at 10. The Court stressed its Operational Directives "specifically provided that *'[p]roceedings pursuant to chapters 210 and 211 pertaining to juvenile delinquency'* were excluded from the provisions allowing for remote proceedings." *Id.* at 5. The Supreme Court of Missouri further noted that its orders issued in response to the COVID-19 pandemic were drafted "to ensure the constitutional and statutory rights of juveniles were protected during the COVID-19 pandemic." *Id*. at 10. The Supreme Court of Missouri vacated the juvenile court's judgment and remanded. *Id.*

We recognize that in *J.A.T.* the Missouri Supreme Court expressly held that virtual *adjudication* hearings, conducted without a juvenile's physical presence, violate rights to due process, confrontation, and presence at all "critical stages" of trial guaranteed by the United States and Missouri Constitutions, and that *J.A.T.* did not specifically examine certification hearings. However, we conclude that *J.A.T.*'s reasoning applies in this case and we must be guided by the decision.

In two recent cases, the Eastern District of this Court examined *J.A.T.* and its application to remote certification hearings in *In re C.A.M.,* 644 S.W.3d 600 (Mo. App. E.D. 2022)[4] and *In re A.L.D.*, 649 S.W.3d 370 (Mo. App. E.D. 2022).

---

[4] The Eastern District initially issued a *per curiam* order and unpublished memorandum affirming the juvenile court's judgment dismissing its jurisdiction over the juvenile. *In re C.A.M.*, 2021 WL 2099546, at *1 (Mo. App. E.D. May 25, 2021). The case was transferred to the Supreme Court of Missouri along with several similar cases involving proceedings conducted by video due to the COVID-

In *In re C.A.M.*, the court considered whether a juvenile court erred in conducting a certification hearing where a juvenile, who did not object, appeared via a two-way video. 644 S.W.3d at 605-07. The court held that the juvenile had a constitutional right to be physically present at his certification hearing, and that requiring the juvenile to appear via two-way video was plain error given that the Supreme Court of Missouri issued Operational Directives carefully drafted to preserve juveniles' constitutional and statutory rights. *Id*. at 606-07. *C.A.M.* held that the juvenile court committed an obvious and clear error affecting the juvenile's substantial rights and that as a result, the juvenile suffered manifest injustice or miscarriage of justice. *Id.* at 607. The court concluded that the juvenile did not waive his right to be present, the juvenile's rights were violated, and the violation was "obvious and clear" because the Supreme Court of Missouri's Operational Directives provided "'proceedings pursuant to chapters 210 and 211 pertaining to juvenile delinquency were excluded from the provisions allowing for remote proceedings.'" *Id.* (quoting *J.A.T.,* 637 S.W.3d at 5). *C.A.M.*'s holding was limited to the juvenile's "right to be physically present at a 'critically important' stage," and did not address the juvenile's claim "that his right to confrontation was also violated." *Id.* at 607.

In *In re A.L.D.*, the Eastern District again, relying on *J.A.T.* and its own decision in *C.A.M.*, held that a juvenile court committed plain error by conducting the juvenile's

19 pandemic. *In re C.A.M.*, 644 S.W.3d 600, 602 (Mo. App. E.D. 2022). After its decisions in *J.A.T. v. Jackson County Juvenile Office*, 637 S.W.3d 1 (Mo. banc 2022), *C.A.R.A. v. Jackson County Juvenile Office*, 637 S.W.3d 50 (Mo. banc 2022), and *State v. Smith,* 636 S.W.3d 576 (Mo. banc 2022), the Supreme Court of Missouri re-transferred *C.A.M.* with instructions for the court to reconsider its earlier holding given those decisions. The Eastern District did so, withdrawing its earlier *per curiam* order and unpublished memorandum.

certification virtually, without the juvenile's physical presence in court. *A.L.D.*, 649 S.W.3d at 372.

Here, the juvenile court prohibited K.D.D. from attending his certification hearing in person, a "critically important" proceeding in which the "essentials of due process and fair treatment" attach. *See Kent*, 383 U.S. at 562; *C.A.M.*, 644 S.W.3d at 606. K.D.D.'s constitutional rights were implicated, contravening the Supreme Court of Missouri's "careful drafting of its COVID Operational Directives 'not [to] be interpreted to permit the violation of a juvenile's constitutional or statutory rights.'" *C.A.M.*, 644 S.W.3d at 606-07 (quoting *J.A.T.*, 637 S.W.3d at 4).

"Properly preserved constitutional violations are presumed prejudicial," *J.A.T.*, 637 S.W.3d at 7 (citation omitted), and in this case, the presumption has not been rebutted. The deprivation of K.D.D.'s due process right to be physically present during his own certification hearing constitutes reversible error. *C.A.M.*, 644 S.W.3d at 606-07.

As *C.A.M.* did, we also limit our holding to K.D.D.'s right to be physically present at a "critically important stage." As the Court explained in *J.A.T.*, the right to be physically present applies where "a fair and just hearing would be thwarted by [the juvenile's] absence, and to that extent only." 637 S.W.3d at 8.

K.D.D.'s first point is granted. Because we have granted K.D.D.'s first point, we do not reach the merits of K.D.D.'s remaining points, that holding the certification hearing remotely via two-way video violated his right to counsel, and that the juvenile court abused its discretion in overruling his motion for continuance and in certifying K.D.D. to be prosecuted as an adult.

11

## Conclusion

The juvenile court's certification judgment is vacated and we remand for an in-person certification hearing.

Janet Sutton, Judge

Hardwick, P.J. and Chapman, J. concur.