

In the

Missouri Court of Appeals

Western District

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent,** | ) | **WD75850** |
| | ) | |
| **v.** | ) | **OPINION FILED:  April 1, 2014** |
| | ) | |
| **DANIEL A. IVEY,** | ) | |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Buchanan County, Missouri**
The Honorable Daniel F. Kellogg, Judge

Before Division One:  Cynthia L. Martin, Presiding Judge, Mark D. Pfeiffer, Judge and
Karen King Mitchell, Judge

Daniel A. Ivey ("Ivey") appeals his conviction for two counts of statutory sodomy

in the first degree, section 566.062[1] following a jury trial.  Ivey contends that the trial

court erred in allowing the admission at trial of out-of-court statements by his child

victim without requiring her to testify.  Ivey did not object to the admission of the

statements at trial, and thus failed to preserve grounds for appeal based on the admission

of the statements.  Ivey nonetheless claims plain error because the testimony violated his

---

[1]All statutory references are to RSMo 2000 as supplemented to the date of Ivey's alleged offenses unless
otherwise indicated.

Sixth Amendment confrontation clause rights under *Crawford v. Washington*, 541 U.S. 36 (2004) and did not qualify for the "forfeiture by wrongdoing" exception, and because the victim did not qualify as "unavailable" under section 491.075.[2]  Because we find no manifest injustice or miscarriage of justice, we affirm the judgment of the trial court.

## Factual and Procedural Background

S.L.I. was born in December 2001.  She lived with her mother ("Mother"), and her father, Ivey.  On April 1, 2011, S.L.I. arrived at school with urine soaked pants.  Her special education teacher, Mary Ellison ("Special Education Teacher"), took her to the nurse's office to change clothes.  The Special Education Teacher noticed a bruise on the inside of S.L.I.'s thigh.  The incident was hotlined, and S.L.I. was taken into custody by the Division of Family Services and placed in with a foster parent ("Foster Mother").  Subsequent investigation led the State to charge Ivey on April 13, 2011 with two counts of statutory sodomy, first degree, pursuant to section 566.062.

On December 1, 2011, the State filed a first amended motion to admit statement of child victim into evidence pursuant to section 491.075 ("Section 491.075 Motion").  The State sought to introduce hearsay statements made by S.L.I. to: (i) Foster Mother; (ii) Detective Trenny Wilson ("Detective Wilson"), who conducted videotaped forensic interviews of S.L.I.; (iii) Brandi Rose ("Children's Division Worker"); (iv) Tess Bethman ("Children's Division Case Manger"); (v) Lisa Fisher ("Children's Advocacy Center

---

[2]Refers to section 491.075 RSMo Cum. Supp. 2008, the version of the statute in effect at the time of Ivey's alleged offenses.

Counselor"); and (vi) Mother. In the Section 491.075 Motion, the State expressly stated that it "plan[ned] to call S.L.I. to testify in this case."

On December 6, 2011, the State filed a motion in limine to allow hearsay statements of victim due to defendant's forfeiture of his confrontation clause rights by his own wrongdoing ("Forfeiture by Wrongdoing Motion"). The State sought to introduce hearsay statements made by the victim to (i) Jansen Duke ("Initial Children's Division Investigator"); (ii) Officer Ed Sexton ("Officer Sexton"); (iii) the Children's Division Worker; (iv) the Children's Division Case Manager; (v) the Foster Mother; (vi) Detective Wilson; and (vii) the Children's Advocacy Center Counselor. The State took the position that Ivey's conduct over several years of S.L.I.'s life "ordered and instilled in S.L.I. to never tell anyone outside the home what happened or went on in the home, which isolated S.L.I." The State sought a ruling that Ivey had forfeited his Sixth Amendment confrontation clause rights as to "allow the State to introduce the hearsay statements of the victim, S.L.I., should S.L.I. not be able to testify at court."

Both of the State's motions were taken up at an evidentiary hearing on December 6, 2011. The State presented the testimony of the Initial Children's Division Investigator; the Children's Division Worker; the Children's Division Case Manager; the Foster Mother; Detective Wilson; the Children's Advocacy Center Counselor; Annie Erickson ("Marillac Therapist"), who treated S.L.I. over a several month period while she was an inpatient; and Bobette Sawka ("Spofford Home Therapist"), who worked with S.L.I. as a therapist for several months. The specific testimony provided from these witnesses is discussed in greater detail as necessary later in this Opinion. In summary,

3

however, the testimony established that S.L.I. reported sexual abuse by Ivey, that she was afraid of Ivey, and that Ivey and Mother had repeatedly told S.L.I. not to share any family secrets and not to trust or respect people in positions of authority, such as police officers. S.L.I.'s emotional reaction to witnesses when efforts were made to discuss her family and how Ivey had treated her was extreme, even bordering on violent. S.L.I. expressed to several of the witnesses that she could not talk about her family, and that Ivey "was in her head."

The court took the State's motions under advisement and afforded Ivey's attorney time to file a written response. In the response, Ivey's attorney objected to both motions, and also objected to any effort by the State to claim that S.L.I. was "unavailable" as a witness under section 491.075.1(2)(c), though the State had not sought this relief in the Section 491.075 Motion.[3] However, the evidence submitted during the hearing on the State's motions left the clear impression that the State was asking the court to declare that S.L.I. was "unavailable" to testify at trial because she would be traumatized if required to do so.

On January 9, 2012, the trial court entered an order ("Pre-trial Order") in response to the State's motions. The Pre-trial Order held that the hearsay statements of S.L.I. made to the Children's Advocacy Center Counselor, Detective Wilson, the Foster Mother, the Children's Division Worker, and the Children's Division Case Manager would be allowed into evidence at trial *without the necessity of S.L.I. testifying in Court*. The Pre-trial

---

[3]Section 491.075 addresses the admission of hearsay statements of a child victim under three scenarios: (1) where the child testifies at trial; (2) where the child is unavailable; or (3) when the child is deemed unavailable because emotional or psychological trauma would result from testifying in the presence of the defendant. The State's Section 491.075 Motion anticipated that S.L.I. would testify at trial.

4

Order did not specify the legal basis for the trial court's ruling that S.L.I. need not testify in court, other than to note that "such testimony would cause significant psychological and emotional trauma to S.L.I."

The Pre-trial Order observed that both the Section 491.075 Motion and the Forfeiture by Wrongdoing Motion had been taken up for hearing, and purported to sustain the "Motion(s)." However, the Pre-trial Order was titled "Judgment Sustaining the [Section 491.075 Motion]." Consistent with this designation, the Pre-trial Order permitted the witnesses identified in the Section 491.075 Motion (with the exception of Mother) to testify about hearsay statements made by S.L.I. and made no mention of the additional witnesses whose hearsay testimony was sought by the Forfeiture by Wrongdoing Motion (the Initial Children's Division Investigator and Officer Sexton).[4] As a result of this confusion, though Ivey and the State agree that the Pre-trial Order granted the Section 491.075 Motion, they do not agree that the Pre-trial Order granted the Forfeiture by Wrongdoing Motion.[5] Stated differently, the parties do not agree that the trial court made a preliminary pre-trial ruling that Ivey had forfeited his Sixth Amendment confrontation clause rights.

At trial, the State called the Special Education Teacher; Officer Sexton; the Initial Children's Division Investigator; the Foster Mother; the Children's Division Worker; the Children's Division Case Manager; Mother; Detective Wilson; the Children's Advocacy

---

[4]Adding to the confusion, the docket entry for the Pre-trial Order reflected on the court's docket sheet indicates that the trial court sustained both the Section 491.075 Motion and the Forfeiture by Wrongdoing Motion.

[5]Ivey contends the Pre-trial Order did not grant the Forfeiture by Wrongdoing Motion. The State contends to the contrary. The disagreement is immaterial. Ivey's claim of error involving the forfeiture by wrongdoing doctrine addresses the the admission of evidence at trial, not the trial court's ruling (or lack thereof) in the Pre-trial Order.

5

Center Counselor; Gary Flenthrope (another Children's Division investigator who assisted the Initial Children's Investigator); Taryn Piers (a Children's Division caseworker who had worked with S.L.I.'s family for approximately one year before the April 1, 2011 hotline incident); Brandy Perry (who lived in S.L.I.'s neighborhood and whose children played with S.L.I.); James DeSpain (who was incarcerated with Ivey); Officer Roy Wedlow (a St. Joseph police officer who investigated a 2010 report of sexual abuse involving Ivey and S.L.I.); and Joyce Estes (executive director of the Children's Advocacy Center). In addition, Detective Wilson's videotaped forensic examinations of S.L.I. were played for the jury. S.L.I. did not testify.

Many of the witnesses at trial testified about out-of-court statements made to them by S.L.I. about Ivey's sexual abuse. Ivey did not object to the admission of any of the out-of-court statements made by S.L.I. on the basis that the statements were hearsay, that the statements violated his Sixth Amendment confrontation clause rights, or that the statements were ineligible for admission because S.L.I. was not "unavailable" pursuant to section 491.075.1(2)(c).[6]

The jury convicted Ivey on both counts of statutory sodomy in the first degree. Ivey was sentenced as a persistent misdemeanor offender to consecutive sentences of forty years imprisonment on each count.

Ivey files this appeal.

---

[6]Ivey did seek a mistrial at the close of the evidence because hearsay testimony from S.L.I. had been admitted through numerous witnesses. The motion was denied. Ivey argued that the denial of his motion for mistrial was error in a motion for new trial. Ivey concedes that these efforts failed to preserve his claim of error in the admission of S.L.I.'s out-of-court statements at trial.

## Standard of Review

Because Ivey failed to timely object at trial, Ivey has not preserved a claim of error regarding the admission of S.L.I.'s out-of-court statements. Ivey acknowledges that our review of his claims of error is limited to plain error review under Rule 30.20. "In order to prevail on an unpreserved claim of error, [Ivey] must demonstrate that plain and obvious error was committed by the trial court ***and*** that either manifest injustice or a miscarriage of justice would occur if the error were not corrected." *State v. Wyble*, 211 S.W.3d 125, 129 (Mo. App. W.D. 2007) (citing *State v. Roberts*, 948 S.W.2d 577, 592 (Mo. banc 1997) (emphasis added)).

## Analysis

Ivey does not contest the sufficiency of the evidence to convict him of two counts of statutory sodomy, first degree. Ivey's issues on appeal relate only to the admission of evidence at trial of S.L.I.'s out-of-court statements about his acts of sexual abuse without the requirement that S.L.I. testify.

First, Ivey claims that it was plain error for the trial court to admit S.L.I.'s out-of-court statements through the testimony of the Children's Advocacy Center Counselor, Detective Wilson (including the videotapes of S.L.I's forensic interviews), the Foster Mother, the Children's Division Worker, and the Children's Division Case Manager, without requiring S.L.I. to testify because (i) the out-of court statements were testimonial hearsay and violated Ivey's Sixth Amendment confrontation clause rights; and because (ii) Ivey did not forfeit his confrontation clause rights by engaging in wrongdoing intended to prevent S.L.I. from testifying.

7

Second, Ivey claims that the trial court plainly erred in finding in the Pre-trial Order that S.L.I. need not testify at trial because the State elicited no evidence at the pre-trial hearing on the Section 491.075 Motion that S.L.I. would be psychologically and emotionally traumatized "from testifying in the personal presence of" Ivey as required by section 491.075.1(2)(c), and established only that S.L.I. was traumatized by authority figures. Ivey contends that the erroneous ruling in the Pre-trial Order led to "the admission of numerous unconfronted hearsay statements" at trial in violation of Ivey's constitutional rights to due process, a fair trial, and to confront witnesses against him.

We begin our analysis with the second point on appeal.

**Point Two**

***The Evidence at the Pre-trial Hearing Supported the Conclusion that S.L.I. was Unavailable as a Witness Pursuant to Section 491.075.1(2)(c)***

Section 491.075 states, in pertinent part:

1. A statement made by a child under the age of fourteen relating to an offense under chapter 565, 566, 568 or 573, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

. . . .

(2)(c) The child is otherwise physically available as a witness but the court finds that the significant emotional or psychological trauma which would result from testifying in the personal presence of the defendant makes the child unavailable as a witness at the time of the criminal proceeding.

8

Ivey does not contest that the State presented substantial evidence to support a conclusion that S.L.I. would suffer from significant emotional or psychological trauma if required to testify at trial. Ivey argues, however, that the evidence only established that S.L.I. would be traumatized by testifying in front of authority figures, and not by testifying in the personal presence of Ivey.

By its clear and unambiguous terms, section 491.075.1(2)(c) provides that a child victim can be declared "unavailable" to testify at trial if emotional or psychological trauma would result by requiring the child to testify *in the personal presence of the defendant*. Our Supreme Court has held that this requires a trial court to find that a child will be traumatized "not by the courtroom generally, but by the presence of the defendant." *State v. Naucke*, 829 S.W.2d 445, 448 (Mo. banc 1992).

We do not agree with Ivey's contention that the State presented no evidence at the pre-trial hearing from which the trial court could have found that S.L.I. would be traumatized from testifying in the personal presence of Ivey.[7] The Foster Mother testified that she saw S.L.I. rocking and crying. When she asked S.L.I. what was wrong, S.L.I. said, "I don't want to talk about it, my dad's in my mind." S.L.I. also told the Foster Mother "I can't tell you what I am thinking because my dad will hurt me, he gets in my

---

[7]Though the trial court did not make an express finding to this effect, the failure to do so is not error. In an analogous situation, we have found the absence of an express finding about the reliability of a child victim's out-of-court statements not to be fatal. *Kierst v. D.D.H.*, 965 S.W.2d 932, 938 (Mo. App. W.D. 1998) (holding that although an express finding of reliability is preferred, such a finding is implicit in a trial court's overruling of objections and ultimate admission of child victim's hearsay statements). The same reasoning applies to a trial court's failure to expressly find that the psychological or emotional trauma a child victim will suffer if required to testify would be due to testifying in the personal presence of the defendant. The trial court is presumed to know and to be guided by the law. *Lane v. Lensmeyer*, 158 S.W.3d 218, 224 (Mo. banc 2005).

mind and he's there and it hurts, you know, I'm in pain." S.L.I. told the Foster Mother she would get in trouble by Ivey if she said anything.

The Children's Division Investigator who interviewed S.L.I. at her school on the day of the hotline report testified that when she asked S.L.I. how she got the bruises she had on parts of her body, S.L.I. went into a trance-like state and rocked back and forth while whispering, "I'm not supposed to say anything." The Children's Division Investigator said that S.L.I. would talk with her about other things, but became very scared when asked to discuss her bruises. When Officer Sexton came into the room, the Children's Division Investigator said S.L.I. started yelling that she did not like the police and that the police were bad.

The Children's Division Worker testified at the pre-trial hearing that she tried to talk with S.L.I. at the foster home. When she asked S.L.I. about her home life, S.L.I. whispered that she was not supposed to tell. S.L.I. rocked back and forth, rubbing her hands. In a later conversation, S.L.I. told the Children's Division Worker that she did not like Ivey and that, "He has got my mind." S.L.I. started crying and told the Children's Division Worker that she did not like Ivey because he got into her bed and hurt her. At this point, S.L.I. began crying uncontrollably and started whispering. Though the Children's Division Worker could not understand what S.L.I. was whispering, the Children's Division Case Manager testified that she could make out that S.L.I. was whispering, "He's my daddy." Over the next few days, S.L.I. began to reveal that Ivey "did nasty things," like touching her privates with his hand.

10

When first interviewed by Detective Wilson, S.L.I. said that she did not like Ivey in her bed and that he was nasty. When asked for details, however, S.L.I. put her head on, then under, the table. Detective Wilson could see that S.L.I.'s lips were moving, but she could not make out what S.L.I. was saying.

The Children's Advocacy Center Counselor testified at the pre-trial hearing that S.L.I. was nervous when asked to identify on a drawing body parts it was not okay for people to touch. S.L.I. curled up in a ball and covered her face, remaining that way for several minutes. She eventually pointed to an area on the drawing that she labeled "butt." In a second interview, S.L.I. reported that she liked getting hugs from Mother, but not from Ivey because he got in her bed. S.L.I. would not say out loud what Ivey did to her in bed, but eventually pointed to the chest and butt areas of the drawing. In a later interview, S.L.I. became violent when asked what Ivey did to her in bed.

The Marillac Therapist testified that she was S.L.I.'s primary therapist while S.L.I. was an inpatient. She testified that S.L.I.'s behaviors were erratic, and that S.L.I. frequently decompensated from the behaviors that could be expected from a ten-year old child. The decompensation often included tantrums. S.L.I. would initially go into a "shut-down mode." During therapy, S.L.I. would put her hands over her mouth and refuse to talk. Over time, S.L.I. began to respond to the Marillac Therapist's praise, and eventually reported that her parents had told her to use the "crazy look" "when the police come or when anybody asks us any questions." The Marillac Therapist asked S.L.I. to demonstrate the "crazy look," and described the look as a fixated look that resembled a trance-like state. S.L.I. would completely shut down when she used the "crazy look."

11

The Marillac Therapist said that S.L.I. told her that she was not supposed to talk to the police or to "bigger people" and that she was supposed to keep family secrets.

The Spofford Home Therapist testified that S.L.I. responded to questions about her family by trying to hide. Though S.L.I. would discuss other subjects, when the subject of her family was raised, S.L.I. would say, "I'm not supposed to talk about that."

We have no difficulty concluding that this evidence presented at the pre-trial hearing supported a finding that S.L.I. would be emotionally or psychologically traumatized by testifying in the personal presence of Ivey. S.L.I.'s repeated references to her fear and dislike of Ivey, coupled with her statements that she had been instructed not to talk about "family secrets" and to adopt a "crazy look" if asked questions by the police or "bigger people," are consistent with a conclusion that S.L.I. would be traumatized if required to testify in the personal presence of Ivey. The trial court did not err (plainly or otherwise) in declaring that S.L.I. was "unavailable" as a witness pursuant to section 491.075.1(2)(c).

Point two is denied.

**Point One**

***Testimonial Out-Of-Court Statements made by S.L.I. that are Admissible under Section 491.075 Remain Subject to the Constraints of the Sixth Amendment Confrontation Clause unless an Applicable Exception Applies***

Though the trial court did not err in determining that S.L.I. was unavailable and need not testify at trial pursuant to section 491.075.1(2)(c), we must separately determine whether the court committed "plain, obvious legal error indicating a potential manifest injustice or miscarriage of justice" in permitting all of S.L.I's out-of-court statements into

12

evidence. *Wyble*, 211 S.W.3d at 130. That is because our Supreme Court in *State v. Justus*, 205 S.W.3d 872 (Mo. banc 2006) limited the application of section 491.075 to **non-testimonial** out-of-court statements made by a child victim in order to abide by the constitutional restraints announced in *Crawford v. Washington*, 541 U.S. 36 (2004).

> *Crawford v. Washington* established a new framework for addressing a criminal defendant's confrontation rights under the Sixth Amendment. . . . Abrogating its previous decision of *Ohio v. Roberts*,[8] the Supreme Court declared in *Crawford* that in order to admit "testimonial" hearsay statements of an unavailable witness, the accused must have had an opportunity to confront, i.e., cross-examine, the witness. . . . "Where *testimonial* evidence is at issue," the Court said, ". . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." 541 U.S. at 68. The Supreme Court, however, left undecided the "comprehensive definition of 'testimonial'" but did say that "at a minimum," the term applies to "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id*.

*Justus*, 205 S.W.3d at 878-79 (some internal citations omitted). In a subsequent case, the United States Supreme Court provided further guidance on the subject of "testimonial" statements. *Id*. at 879.

> Following *Crawford*, the Supreme Court in 2006, in *Davis v. Washington*[9]. . . said, "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." By contrast, the Court said, such out-of-court statements are testimonial "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."

---

[8]448 U.S. 56 (1980).
[9]547 U.S. 813 (2006).

*Id.* (citing *Davis*, 547 U.S. 813, 822 (2006)). Applying these constitutional principles to section 491.075, our Supreme Court concluded that ***testimonial*** hearsay statements of a child victim may not be admitted under section 491.075 unless the "two conditions articulated in *Crawford* have been met: (1) witness unavailability, and (2) the defendant's prior opportunity to cross-examine the witness." *Id.* at 881.

Here, Ivey claims plain error with respect to the trial court's admission of S.L.I.'s out-of-court statements through the trial testimony of the Children's Advocacy Center Counselor, Detective Wilson (including the videotaped forensic interviews of S.L.I.), the Foster Mother, the Children's Division Worker, and the Children's Division Case Manager. He claims that S.L.I.'s statements to these witnesses were testimonial and that because he had no opportunity to cross-examine S.L.I. his Sixth Amendment confrontation rights were violated.

The State concedes that S.L.I.'s out-of-court statements to Detective Wilson (include the videotaped forensic interviews of S.L.I.), to the Children's Division Worker, and to the Children's Division Case Manager were testimonial, but argues that the statements to the Foster Mother and to the Children's Advocacy Center Counselor were nontestimonial. The State argues that even if we view the out-of-court statements made by S.L.I. to the Foster Mother and to the Children's Advocacy Center Counselor to be testimonial, admission of S.L.I.'s testimonial hearsay was not erroneous because Ivey forfeited his Sixth Amendment rights by wrongdoing.

In *Giles v. California*, 554 U.S. 353, 359 (2008), the United States Supreme Court held that at common law, "statements of a witness who was 'detained' or 'kept away' by

14

the 'means or procurement' of the defendant" were admissible hearsay. "We held in *Crawford* that the Confrontation Clause is 'most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time of the founding.'" *Id.* at 358 (quoting *Crawford*, 541 U.S. at 54). Thus, because the "forfeiture by wrongdoing" exception existed at common law, admission of testimonial hearsay within the exception does not violate the Sixth Amendment confrontation clause. The forfeiture by wrongdoing doctrine applies "only when the defendant engage[s] in conduct *designed* to prevent the witness from testifying." *Id.* at 359. The theory of the doctrine dates to the decision in *Reynolds v. United States*, where it was held that:

> [I]f a witness is absent by [defendant's] own wrongful procurement, [defendant] cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts.

98 U.S. 145, 158 (1878).

In the context of victims of domestic violence, *Giles* observed:

> Acts of domestic violence often are intended to dissuade a victim from resorting to outside help, and include conduct designed to prevent testimony to police officers of cooperation in criminal prosecutions. Where such an abusive relationship culminates in murder, the evidence may support a finding that the crime expressed the intent to isolate the victim and to stop her from reporting abuse to the authorities or cooperating with a criminal prosecution--rendering her prior statements admissible under the forfeiture doctrine. Earlier abuse, or threats of abuse, intended to dissuade the victim from resorting to outside help would be highly relevant to this inquiry, as would evidence of ongoing criminal proceedings at which the victim would have been expected to testify.

554 U.S. at 377.[10] *Giles* thus opened the door to application of the forfeiture by wrongdoing doctrine to permit the admission of testimonial hearsay from a *murdered* domestic abuse victim in a subsequent criminal proceeding against the murderer. *Id.* In fact, our Supreme Court relied on *Giles* in *State v. McLaughlin*, 265 S.W.3d 257, 272 (Mo. banc 2008) to hold that admission of a murdered domestic violence victim's out-of-court testimonial statements to the police and to others did not violate the defendant's Sixth Amendment confrontation rights because of the forfeiture by wrongdoing doctrine.

The State cites to no authority, and we are aware of none, where the forfeiture by wrongdoing doctrine has been applied to permit the admission of testimonial out-of-court statements by a child victim who has been declared "unavailable" because testifying in the personal presence of her abuser would cause psychological or emotional trauma. We can articulate an argument that the forfeiture by wrongdoing doctrine should apply in such cases, as a witness's absence can be procured by intimidation and harassment no less effectively than by secreting away or murdering the witness. We are mindful, however, that reliance on the forfeiture by wrongdoing doctrine to shelter a child victim from cross-examination could abrogate Sixth Amendment confrontation rights in nearly every situation where a child is deemed "unavailable" under section 491.075.1(2)(c).

---

[10]The majority opinion in *Giles* was written by Justice Scalia, and was joined by Chief Justice Roberts and Justices Thomas, Alito, Souter and Ginsburg. However, the portion of the majority opinion addressing the application of the forfeiture by wrongdoing doctrine to domestic violence cases was only joined in by Chief Justice Roberts and Justices Thomas and Alito.

We need not resolve this issue of first impression.[11] Even if the trial court committed error by admitting testimonial hearsay through Detective Wilson, the videotaped forensic interviews, the Children's Division Worker, the Children's Division Case Manager, the Children's Advocacy Center Counselor, and the Foster Mother,[12] without requiring S.L.I. to testify, Ivey cannot establish "either manifest injustice or a miscarriage of justice would occur if the error were not corrected." *Wyble*, 211 S.W.3d at 129 (citing *Roberts*, 948 S.W.2d at 592). That is because non-hearsay evidence admitted at trial, and to which Ivey expresses no claim of error, was sufficient to convict Ivey.[13]

S.L.I.'s Mother testified that 2 1/2 months before S.L.I. was taken into protective custody, she saw Ivey lying on the bed with S.L.I. Mother saw Ivey's hand down the front of S.L.I's pull-up diaper, and the pull-up was "moving." Mother did nothing, purportedly because she was afraid of Ivey. Mother observed a nearly identical incident 3 days later. During this same time period, Mother saw Ivey grab S.L.I.'s hand while both were seated on the couch. Ivey put S.L.I.'s hand over his crotch. Mother testified that on one of the occasions when she saw Ivey and S.L.I. on the bed, S.L.I. later came

---

[11]As discussed, *supra*, it is not at all clear from the record that the trial court admitted the S.L.I.'s testimonial hearsay because it found that Ivey forfeited his Sixth Amendment confrontation rights by wrongdoing. Moreover, we express no opinion as to whether this record would have supported finding that Ivey forfeited his confrontation clause rights by wrongdoing.

[12]Because this is a plain error case, and because other evidence not contested by Ivey is sufficient to support the jury's determination of Ivey's guilt, we need not resolve whether S.L.I.'s out-of-court statements to the Foster Mother and to the Children's Advocacy Center Counselor were testimonial.

[13]In *Justus*, our Supreme Court held that "[p]roperly preserved confrontation clause violations are presumed prejudicial," and that a "trial court's judgment" in such a case "can only be upheld if the error was 'harmless beyond reasonable doubt.'" 205 S.W.3d at 881 (quoting *State v. Wolfe*, 13 S.W.3d 248, 263 (Mo. banc 2000), *abrogated on other grounds by Mitchell v. Kardesch*, 313 S.W.3d 667 (Mo. banc 2010)). Where confrontation clause violations are not preserved as error, however, there is no presumption of prejudice. *Wyble*, 211 S.W.3d at 132 (citing *State v. Isa*, 850 S.W.2d 876, 884 (Mo. banc 1993) (holding that when the standard of review is plain error, a defendant bears the burden of showing prejudice resulting in manifest injustice)).

17

out of the room crying. Mother later observed that S.L.I.'s vagina was red. She also witnessed S.L.I. attempting to insert a baby bottle into her vaginal area during bath time.

James DeSpain testified that he had been a cellmate with Ivey. Ivey had a black eye, and when DeSpain asked him why, he said he "did something" to his daughter and other guys in jail beat him up. Ivey told DeSpain he had been drinking and did something to his daughter that he shouldn't have. Ivey told DeSpain he "raped" his daughter, and that his "old lady" was going to help him beat the charges by trying to pin the abuse on a son. DeSpain testified that Ivey told him he put his hands down his daughter's pants and had her do the same to him while watching pornography on the bed.

In light of this evidence, Ivey fails to persuade us that he will suffer a manifest injustice or a miscarriage of justice if we fail to correct purported error in the admission of testimonial out-of-court statements made by S.L.I.

## Conclusion

There is no basis for granting plain error relief in this case. The judgment of the trial court is affirmed.


_____
Cynthia L. Martin, Judge


All concur