

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI, )
          )
          Respondent, )
          ) No. SD 38242
          v. )
          ) **Filed: September 25, 2025**
ORLANDO C. MOORE, SR., )
          )
          Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF DUNKLIN COUNTY

Honorable Robert N. Mayer, Judge

### <u>AFFIRMED</u>

Orlando Moore appeals his convictions, after bench trial, of second-degree domestic assault and first-degree property damage. Because there was no abuse of discretion in the trial court's admission of the victim's ("Victim") statements to police under the forfeiture-by-wrongdoing hearsay exception, we affirm. We decline plain error review of Moore's Sixth Amendment confrontation-clause claim.

### Factual Background

Victim contacted the police to report incidents of domestic violence committed by Moore in December 2022 and twice in January 2023. At trial, a Dunklin County Sheriff's Deputy ("Deputy") testified that he responded to calls for service regarding Victim and Moore on

December 12, 2022, and January 4 and 18, 2023.[1]  On December 12, Victim told Deputy that she had been arguing with Moore regarding the parenting of Victim's children.  The argument turned physical.  Victim told Deputy that Moore grabbed her shirt and began choking her.  Victim also told Deputy that Moore kicked one of her children in the wrist during the encounter.  Deputy offered medical assistance for the child's injury, but Victim indicated that she would take her daughter to the hospital herself.

Deputy testified that on January 4, 2023, he was dispatched to respond to a domestic dispute between Victim and Moore.  Deputy testified that Moore was "attempting to kick in the door."  Victim told Deputy that Moore punched her in the face.  She also reported that earlier that day she had tried to obtain an *ex parte* order of protection.

On January 18, 2023, Deputy was again dispatched to Victim's residence.  Victim told Deputy that she and Moore had engaged in a verbal argument that turned physical when Moore struck her in the face and pushed her against a wall.  Victim also told Deputy that Moore had caused damage inside the residence, including pulling a television from the wall, causing a hole in the wall from a cable attached to the television, breaking furniture, and breaking a vase.  Deputy further testified that Victim reported that Moore slammed her against the wall, jumped on her, struck her in the face with his fist, slapped her across the face, and punched Victim's nine-year-old son in the stomach.

On January 18, 2023, Victim completed a written statement.  Deputy read the statement into the record:[2]

---

[1] Moore's counsel raised a continuing hearsay objection to all of Deputy's testimony as to what Victim told him about the incidents.

[2] Throughout this opinion, all quoted material is exactly as it was provided in the record; we have not corrected any errors in spelling, grammar, or punctuation unless otherwise indicated.

On 1/18/23, Orlando Moore came to my house, [location], he walked into my house. He assaulted me inside my home. He punched me in my face. He slapped me. He punched my nine-year-old son in the stomach. He knocked my head into the wall. My living room wall have big hole. I grabbed my mace. I maced Orlando at his face to protect myself, but he still grabbed me and I continued to assault me. So, I grabbed and broke a letter off my floor and hit Orlando Moore to protect myself from hit, hurting me. Orlando Moore broke my 86-inch LG TV, and he broke my 55-inch TV in my room. Because, he broke my glass light in my kitchen. He put a big hole in my living room wall. Orlando Moore continued to assault me in front of my nine-year-old son, [name].

A bench trial was scheduled for July 10, 2023. The State requested a pretrial hearing pursuant to § 491.016 ("491 hearing"), the statute that codifies the forfeiture-by-wrongdoing hearsay exception. [3] The trial court conducted the 491 hearing on July 10, 2023, took that matter under advisement, and continued the case for a pretrial conference. At the 491 hearing, the State called Victim to the witness stand. She testified as follows:

[Prosecutor]: And ma'am, you've been subpoenaed as a victim/witness in the cases that are here today, State of Missouri against Orlando Moore. Is that correct?

[Victim]: Yes.

[Prosecutor]: And in prior conversations, you have indicated to me that you do not intend to testify today. Is that correct?

[Victim]: Right.

[Prosecutor]: You're going to refuse to answer questions?

[Victim]: Right.

The State then introduced a recording of a phone call between Moore and Victim which was made while Moore was detained in the Dunklin County Jail. Initially, an investigator in the Dunklin County Prosecutor's Office testified as to the contents of the phone call. On direct examination, the investigator testified as follows:

Q:       While listening to those phone calls between the Defendant and [Victim],

---

[3] Unless otherwise indicated, all statutory references are to RSMo. (Cum. Supp. 2021).

3

was there conversations about [Victim] failing to abide by the terms of the subpoena that was issued to her?

A:  Yes.

Q:  Can you describe that to us?

A:  So, Mr. Moore, essentially, was telling [Victim] that he had had some research done and she did not have to come to court and abide by the Subpoena.

Q:  Did he say, quote, you don't have to come?

A:  Yes.

Q:  Did he say, you don't show up when I go to trial?

A:  Yes.

Q:  Did he say, they can't do nothing to you after you've been Subpoenaed?

A:  Yes.

Q:  So, if they were to Subpoena you and whatnot and you don't come, they can't do, quote, a bitch ass thing about it, if I go to trial and you not there?

A:  That's correct.

Q:  Was there are also conversations between the two of them about [Victim] simply not testifying?

A:  I don't recall her or anyone saying she was not going to.

Q:  Did she indicate that she would, if she were to testify that she may testify to facts that she has never previously stated in court?

A:  I'm not sure what she stated in court.

Q:  Did the facts that she advised she might say, were they different than facts that had been previously relayed to law enforcement?

A:  Yes, from my understanding.

Subsequently, the audio recording was played for the court. The State argued that the recorded phone call supported the admission of Victim's statements to police because the conversation during the phone call demonstrated Moore engaged in wrongdoing for the purpose

4

of causing Victim's unavailability. After hearing the recording of the phone call, the trial court found by a preponderance of the evidence "that the Defendant did engage in the purpose of causing the unavailability of the witness and the witness refusing to testify[.]" The trial court specifically found Moore "tr[ied] to impress upon [Victim] and influence her that she didn't have to be here on these, these days for the hearings were scheduled." The trial court concluded, "I'm going to find [in] favor of the State on the [§] 491.016."

Victim did not appear at trial. Deputy testified about the content of Victim's verbal and written statements to law enforcement regarding each of the three incidents.[4] Moore testified on his own behalf. He stated Victim was drinking on the night of January 18, 2023, and she initiated a verbal argument with him. Moore testified that Victim threw a "temper tantrum" and destroyed the television and furniture in her own home. Moore testified that he never touched Victim, despite her striking him with a vase, throwing a drink in his face, and spraying him with mace. The trial court found Moore guilty beyond a reasonable doubt of the class D felony of domestic assault in the second degree and of the class E felony of property damage in the first degree.

On appeal, Moore challenges the trial court's admission of Victim's statements to the police on two grounds. In Point I, Moore argues that the admission of the statements violated his Sixth Amendment right to confront and cross-examine witnesses who testified against him and that the State failed to demonstrate that Moore engaged in wrongdoing for the purpose of rendering Victim unavailable. In Point II, Moore argues the trial court abused its discretion in admitting Victim's statements, because they were hearsay and the State failed to demonstrate by a preponderance of the evidence that Moore "engaged in … wrongdoing with the purpose of causing the unavailability of the witness."

---

[4] See pp. 2-3, *supra*.

**Legal Standards**

Trial courts have broad discretion over admission or exclusion of evidence in a criminal trial. *State v. Wood*, 580 S.W.3d 566, 574 (Mo. banc 2019). We will overturn an evidentiary ruling only when this discretion is clearly abused. *Id.* We must not disturb a trial court's exercise of discretion unless it "'is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.'" *Id.* (quoting *State v. Blurton*, 484 S.W.3d 758, 769 (Mo. banc 2016)). On appeal, we review "for prejudice, not mere error, and will reverse only if the error was so prejudicial it deprived the defendant of a fair trial." *State v. Hein*, 553 S.W.3d 893, 896 (Mo.App. E.D. 2018). In other words, we may reverse the trial court only "if there is a 'reasonable probability that the court's error affected the outcome of the trial.'" *State v. Winfrey*, 337 S.W.3d 1, 5 (Mo. banc 2011) (quoting *State v. Barriner*, 111 S.W.3d 396, 401 (Mo. banc 2003)).

"In a bench trial, the court is given more latitude in the admission of evidence[,]" *State v. Coaston*, 609 S.W.3d 527, 528 (Mo.App. S.D. 2020), and errors are not prejudicial "unless the trial court relies on the inadmissible evidence in making its findings." *State v. Norman*, 618 S.W.3d 570, 575 (Mo.App. W.D. 2020) (quoting *State v. Dixon*, 586 S.W.3d 304, 317 (Mo.App. W.D. 2019)).

> On appeal, we presume that any improper or inadmissible evidence admitted in a bench-tried case was not prejudicial and that the trial court was not influenced by it in reaching its judgment unless it is apparent from the record that the trial court considered and relied on the improper or inadmissible evidence. Absent some showing that the evidence inflamed the fact-finder or diverted its attention from the issues to be resolved, the receipt of evidence even though irrelevant and immaterial, cannot constitute prejudicial or reversible error. As a result, it is nearly impossible to obtain a reversal based upon the improper admission of evidence in a court-tried case.

*Id.* (citation modified).

6

### *Hearsay*

Any out-of-court statement offered as proof of the matter asserted and that is dependent upon the veracity of the statement for its value is considered hearsay. ***State v. Reynolds***, 456 S.W.3d 101, 104 (Mo.App. W.D. 2015). As a general rule, hearsay statements are inadmissible

> because they lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the [fact finder].

***Chambers v. Mississippi***, 410 U.S. 284, 298 (1973).

In addition to its lack of reliability, admission of hearsay also implicates the Sixth Amendment right to confront one's accusers. "The Confrontation Clause of the Sixth Amendment to the United States Constitution bars admission of unconfronted testimonial statements of a witness who does not appear at trial." ***State v. Hartwein***, 648 S.W.3d 834, 856 (Mo.App. E.D. 2022). In ***Crawford v. Washington***, the Supreme Court held, "[w]here testimonial evidence is at issue, … the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." 541 U.S. 36, 68 (2004).

In Missouri, the forfeiture-by-wrongdoing hearsay exception is created by statute. Section 491.016.1 reads:

> A statement made by a witness that is not otherwise admissible is admissible in evidence in a criminal proceeding as substantive evidence to prove the truth of the matter asserted if, after a hearing, the court finds by a preponderance of the evidence that:
>
> (1) The defendant engaged in or acquiesced to wrongdoing with the purpose of causing the unavailability of the witness;
>
> (2) The wrongdoing in which the defendant engaged or acquiesced has caused or substantially contributed to cause the unavailability of the witness;
>
> (3) The state exercised due diligence to secure by subpoena or other means the attendance of the witness at the proceeding, or the witness is unavailable

7

because the defendant caused or acquiesced in the death of the witness; and

(4) The witness fails to appear at the proceeding.

## Discussion

The questions presented in this appeal are (1) whether introduction of Victim's statements to police violated Moore's Sixth Amendment right to confront and cross-examine his accuser; and (2) whether Victim's statements to police were properly admitted under Missouri's statutory forfeiture-by-wrongdoing exception to the general prohibition of hearsay evidence. For ease of discussion, we address Moore's points out of order.

### *Point II*

Moore argues in Point II that the trial court erred in admitting Victim's oral and written statements to police regarding Moore's alleged acts of domestic violence against her. Moore contends the State failed to prove by a preponderance of the evidence that he "engaged in or acquiesced to wrongdoing with the purpose of causing the unavailability of the witness." We review for abuse of discretion. *Wood*, 580 S.W.3d at 574.

Under § 491.016.1, statements that are otherwise inadmissible (including hearsay) may be admissible at trial if, after a hearing, the trial court determines by a preponderance of the evidence that:

(1) [t]he defendant engaged in or acquiesced to wrongdoing with the purpose of causing the unavailability of the witness;

(2) [t]he wrongdoing in which the defendant engaged or acquiesced has caused or substantially contributed to cause the unavailability of the witness;

(3) [t]he state exercised due diligence to secure by subpoena or other means the attendance of the witness at the proceeding … ; and

(4) [t]he witness fails to appear at the proceeding.

Moore contends that the discussion during the jail phone call does not demonstrate that his

actions "caused or substantially contributed to cause the unavailability of the witness." The trial court determined—after hearing testimony regarding the phone call, then the recorded audio of the call itself—that the State had met its burden to demonstrate by a preponderance of the evidence that Moore "did engage in the purpose of causing the unavailability of the witness and the witness refusing to testify[.]" The trial court also specifically stated that Moore "tr[ied] to impress upon [Victim] and influence her that she didn't have to be here on these, these days for the hearings were scheduled."

We have thoroughly reviewed the record, including listening to the recorded jail phone call between Moore and Victim. We find no abuse of discretion in the admission of the challenged evidence under § 491.016.

During the recorded call, Moore accused Victim of cheating on him with another man, which Victim vehemently denied. Moore stated that a woman such as Victim, who claimed to love him and who claimed Moore was her "baby daddy," would not want him "to be on that type of time." Moore inaccurately told Victim she faced no or only minimal consequences if she was subpoenaed but did not appear at trial. Moore also inaccurately told Victim that if she testified, Moore could be sentenced to 22 years in prison and he would be required to serve 85 percent of that sentence. It was reasonable for the trial court to infer that Moore was attempting to manipulate the Victim to assure she would not appear or testify.

Moore argues that the phone call did not contain any threats of harm to Victim, thus, the call was insufficient to show by a preponderance of the evidence that Moore's statements "substantially contributed to cause the unavailability of the witness." § 491.016.1(2).

Missouri courts have held that the intent to cause unavailability of a witness may be shown by circumstantial evidence or inferred from surrounding facts. *See* ***Hartwein***, 648 S.W.3d at 859;

9

*State v. Williams*, 405 S.W.3d 592, 599 (Mo.App. S.D. 2013). Cases interpreting the forfeiture-by-wrongdoing exception in other jurisdictions support our determination. *See U.S. v. Jonassen*, 759 F.3d 653, 662 (7th Cir. 2014) (interpreting Fed. R. Evid. 804) ("incessant pretrial manipulation" sufficient to support trial court's finding of procured unavailability); *State v. Maestas*, 412 P.3d 79, 81 (N.M. 2018) ("wrongdoing, for purposes of the forfeiture-by-wrongdoing exception, need not take the form of overt threat of harm; various forms of coercion, persuasion, and control may satisfy the requirement"); *State v. Hallum*, 606 N.W.2d 351, 356 (Iowa 2000) ("Misconduct sufficient to give rise to a forfeiture is not limited to the use of threats, force[,] or intimidation…. [I]t has also been held to include persuasion and control by a defendant ….").  Moreover, "it may often be the case that the nature of the conduct is less important than the effect of the conduct on the witness's willingness or ability to testify at trial." *Maestas*, 412 P.3d at 88 (citing *Jonassen*, 759 F.3d at 662).

Although Moore may have not directly threatened harm to Victim in the jail phone call, he used other manipulative tactics.  He accused Victim of unfaithfulness, implied that if she loved him and he was her "baby daddy" she would not testify against him, and exaggerated the potential sentence he faced if convicted while downplaying the consequences to Victim if she violated the subpoena.  These tactics demonstrate Moore's attempts to render Victim unavailable through manipulation, persuasion, and blame.  Accordingly, we find no abuse of discretion in the trial court's finding that Moore engaged in behaviors with the intent to cause the Victim's unavailability.  Point II is denied.

### Point I

In Point I, Moore argues that the admission of Victim's testimonial hearsay statements violated his Sixth Amendment right to confront and cross-examine Victim and that the State failed

10

to demonstrate that Moore engaged in wrongdoing for the purpose of rendering Victim unavailable. In *Crawford*, the Supreme Court held that for testimonial hearsay statements by an unavailable witness to be admitted as evidence, the defendant must have had a prior opportunity to cross-examine the declarant regarding those statements. 541 U.S. at 68. In *Giles v. California*, the Supreme Court determined that a criminal defendant who engaged in intentional wrongdoing which caused the absence of a witness forfeited his constitutional right to confront that witness. 554 U.S. 353, 358-59, 361 (2008). The *Giles* court relied on the following statement of the law from *Reynolds v. U.S.*:

> The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by his own wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts. It grants him the privilege of being confronted with the witnesses against him; but if he voluntarily keeps the witnesses away, he cannot insist on his privilege. If, therefore, when absent by his procurement, their evidence is supplied in some lawful way, he is in no condition to assert that his constitutional rights have been violated.

98 U.S. 145, 158 (1878).

> Missouri courts have described the rules in *Crawford* and *Giles* as follows:

> In *Giles v. California*, 554 U.S. 353, 359 (2008), the United States Supreme Court held that at common law, "statements of a witness who was 'detained' or 'kept away' by the 'means or procurement' of the defendant" were admissible hearsay. "We held in *Crawford* that the Confrontation Clause is 'most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time of the founding.'" *Id.* at 358, (quoting *Crawford*, 541 U.S. at 54). Thus, because the "forfeiture[-]by[-]wrongdoing" exception existed at common law, admission of testimonial hearsay within the exception does not violate the Sixth Amendment confrontation clause. The forfeiture[-]by[-]wrongdoing doctrine applies "only when the defendant engage[s] in conduct designed to prevent the witness from testifying." *Id.* at 359.

*State v. Ivey*, 427 S.W.3d 854, 862 (Mo.App. W.D. 2014) (citation modified).

In sum, the forfeiture-by-wrongdoing hearsay exception may permit admission of even

unconfronted testimony as long as the defendant's conduct was undertaken with the intent to prevent the witness from testifying. *Giles*, 554 U.S. at 367-68. The Supreme Court, in dicta, specified that forfeiture by wrongdoing is particularly relevant in cases of domestic violence.

> Acts of domestic violence often are intended to dissuade a victim from resorting to outside help, and include conduct designed to prevent testimony to police officers or cooperation in criminal prosecutions. Where such an abusive relationship culminates in murder, the evidence may support a finding that the crime expressed the intent to isolate the victim and to stop her from reporting abuse to the authorities or cooperating with a criminal prosecution—rendering her prior statements admissible under the forfeiture doctrine. Earlier abuse, or threats of abuse, intended to dissuade the victim from resorting to outside help would be highly relevant to this inquiry, as would evidence of ongoing criminal proceedings at which the victim would have been expected to testify.

*Id.* at 377.

We do not plunge directly into a forfeiture-by-wrongdoing analysis because the confrontation-clause issue was not preserved for our review, as it was not raised as an objection at trial. Moore did object and argue that Victim's statements were inadmissible hearsay, but he did not object to the admission of the statements on confrontation-clause grounds. Moore specifically requests that we review his unpreserved claim for plain error under Rule 30.20.[5]

This court has discretion to review an unpreserved claim of error on appeal, but only for plain error. *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020). Our discretion is not unlimited, however. *Id.* We may only exercise our discretion to engage in plain error review if "the claimed error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *Id.* (internal punctuation and citations omitted). This is a much higher threshold than the assertion of prejudice. *State v. Stuckley*, 573 S.W.3d 766, 768 (Mo.App. S.D. 2019). "The plain error rule is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review." *Brandolese*,

---

[5] Unless otherwise specified, rule references are to Missouri Court Rules (2023).

601 S.W.3d at 526 (quoting **State v. Jones**, 427 S.W.3d 191, 195 (Mo. banc 2014)).

> Rule 30.20 is no panacea which a criminal defendant can use to obtain appellate review of any alleged error that is unpreserved. An appellate court is not required to engage in plain error review; the decision whether to grant or deny such a request is left to the court's discretion. The court may simply decline to exercise its discretionary authority to review the point for plain error.

**State v. Snyder**, 592 S.W.3d 375, 379 (Mo.App. S.D. 2019) (citation modified). The burden of demonstrating manifest injustice sufficient to warrant plain error review lies with the defendant. **Brandolese**, 601 S.W.3d at 526.

Moore argues manifest injustice befell him because Victim's statements were the only evidence presented by the State. Without those statements, "the State would have lacked sufficient evidence to sustain the charges." As demonstrated in our analysis of Point II, Moore's own actions caused the forfeiture of his Sixth Amendment right to confrontation. Having already determined that there was no error in the trial court's admission of Victim's statements pursuant to the statutory forfeiture-by-wrongdoing hearsay exception, we decline plain error review of the unpreserved confrontation-clause claim asserted in Point I.

JACK A. L. GOODMAN, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

MATTHEW P. HAMNER, J. – CONCURS

13